# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**COVERALL NORTH AMERICA, INC.,**

                    **Petitioner,**

   **vs.**

**DENISSE PINEDA,**

                    **Respondent.**

**Civil Action No.:  07-03012-WJM-MF**

**Motion Date:  October 9, 2007**

**ORAL ARGUMENT REQUESTED**

## OPPOSITION TO DENISSE PINEDA'S MOTION TO DISMISS COVERALL NORTH AMERICA, INC.'S PETITION TO COMPEL ARBITRATION

**DLA PIPER US LLP**
(A New Jersey Limited Liability Partnership)
Two Tower Center Blvd., Suite 1600
East Brunswick, New Jersey  08816-1100
(732) 590-1850

**DLA PIPER US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois  60601-1293
(312) 368-4000

Attorneys for Petitioner
Coverall North America, Inc.

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 1

I.     PINEDA'S SUBMISSION VIOLATES THIS COURT'S LOCAL CIVIL RULES
       AND SHOULD BE STRICKEN ..................................................................... 1

II.    ALL QUESTIONS REGARDING THE VALIDITY OF PINEDA'S
       ARBITRATION AGREEMENT MUST BE RESOLVED BY THE
       ARBITRATOR ............................................................................................... 3

III.   BECAUSE THE "VINDICATION OF STATUTORY RIGHTS" EXCEPTION
       ONLY APPLIES WHEN FEDERAL STATUTORY CLAIMS ARE AT ISSUE,
       PINEDA HAS NOT PRESENTED ANY VIABLE BASIS FOR
       INVALIDATING ANY PROVISION OF HER ARBITRATION AGREEMENT .......... 5

IV.    EVEN UNDER PINEDA'S PROFFERED STANDARD, EACH PROVISION IN
       THE ARBITRATION AGREEMENT SHOULD BE ENFORCED ...................... 9

       A.   The Class Action Waiver Is Fully Enforceable ..................................... 9

       B.   Pineda's Assertions Concerning The Costs Of Arbitration Are Not A
            Valid Basis For Relieving Pineda Of Her Agreement To Arbitrate .................... 13

            1.   A Claim Of Excessive Costs May Be Raised Only When Federal
                 Statutory Claims Are At Issue .................................................... 14

            2.   Pineda Has Not Proved That She Is Unable To Afford Arbitration ......... 14

            3.   Because Pineda Has Not Availed Herself Of The AAA's Hardship
                 Procedures, She Should Not Be Permitted To Complain About
                 Costs ......................................................................................... 16

       C.   The Attorneys' Fees Provision Does Not Prevent Arbitration of this
            Dispute .......................................................................................... 17

            1.   New Jersey Enforces Contractual Fee Provisions .......................... 17

            2.   The Risk That Pineda Might Have To Pay Fees Is Too Speculative
                 To Warrant Invalidating Her Arbitration Agreement .......................... 18

       D.   The Remedy Limitation And The Punitive Damages Waiver Do Not Make
            Pineda's Arbitration Agreement Unenforceable ................................. 19

E.      The Contractual Limitations Period Is Enforceable ...........................................20

F.      The Confidentiality And No-Collateral-Estoppel Provisions Are Enforceable ..........................................................................................................20

V.      IF THIS COURT FINDS ANY PROVISION IN THE ARBITRATION AGREEMENT UNENFORCEABLE, THAT PROVISION SHOULD BE SEVERED AND THE OBLIGATION TO ARBITRATE PRESERVED ....................22

VI.     PINEDA'S REQUEST, IN THE ALTERNATIVE, THAT THIS ACTION BE STAYED SHOULD BE DENIED ...................................................................................24

CONCLUSION ...........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*AT&T Corp. v. Ting,*
  319 F.3d 1126 (9th Cir. 2003) ................................................................... 21

*Am. Heritage Life Ins. Co. v. Orr,*
  294 F.3d 702 (5th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003) ............................. 15, 16

*Anders v. FPA Corp.,*
  164 F.R.D. 383 (D.N.J. 1995) ................................................................. 17

*Anders v. Hometown Mortg. Servs., Inc.,*
  346 F.3d 1024 (11th Cir. 2003) ............................................................. 24

*Apollo Computer, Inc. v. Berg,*
  886 F.2d 469 (1st Cir. 1989) .................................................................. 4

*Blair v. Scott Specialty Glass,*
  283 F.3d 595 (3rd Cir. 2002) ........................................................ 12, 15, 16

*Booker v. Robert Half Int'l, Inc.,*
  413 F.3d 77 (D.C. Cir. 2005) ............................................................... 24

*Bosworth v. Ehrenreich,*
  823 F. Supp. 1175 (D.N.J. 1993) ........................................................... 25

*Boyd v. Town of Hayneville,*
  144 F. Supp. 2d 1272 (M.D. Ala. 2001) ..................................................... 16

*Bradford v. Rockwell Semiconductor Sys., Inc.,*
  238 F.3d 549 (4th Cir. 2001) ........................................................ 14, 15, 17

*Brown v. Wheat First Secs., Inc.,*
  257 F.3d 821 (D.C. Cir. 2001) ............................................................... 8

*Burden v. Check into Cash of Ky., LLC,*
  267 F.3d 483 (6th Cir. 2001) ............................................................... 10

*Campbell v. General Dynamics Gov't Sys. Corp.,*
  407 F.3d 546 (1st Cir. 2005) ................................................................ 6

*Casarotto v. Doctor's Assocs.,*
  517 U.S. 681 (1996) ........................................................................ 6

- iii -

*Casey v. Gulfstream Aerospace,*
    428 F.3d 1359 (11th Cir. 2005) ....................................................................21

*Coastal Group, Inc. v. Westholme Partners,*
    1998 WL 34233133 (D.N.J. Dec. 15, 1998) ...................................................2

*Cole v. Burns Int'l Sec. Servs.,*
    105 F.3d 1465 (D.C. Cir. 1997)) - ...................................................................8

*Contec Corp. v. Remote Solution Co., Ltd.,*
    398 F.3d 205 (2nd Cir. 2005) ..........................................................................4

*Cooper v. MRM Inv. Co.,*
    367 F.3d 493 (6th Cir. 2004) .........................................................................17

*Dabney v. Option One Mortgage Corp.,*
    2001 WL 410543 (E.D. Pa. Apr. 19, 2001) ...................................................16

*Delta Funding Corp. v. Harris,*
    189 N.J. 28 (2006) .........................................................................................10

*Delta Funding Corp. v. Harris,*
    396 F. Supp. 2d 512 (D.N.J. 2004) .......................................................9, 15, 16

*Developers Surety & Indemnity, Co. v. NDK General Contractors, Inc., et al.,*
    2007 WL 542381 (D.N.J. Feb. 15, 2007) ........................................................3

*Dillon v. Typaldos,*
    2006 WL 1381625 (N.J. Super. Ct. Ch. Div. May 19, 2006)...........................4

*Dobbins v. Hawk's Enters.,*
    198 F.3d 715 (8th Cir. 1999) ....................................................................16, 17

*Erie Ry. Co. v. Tompkins,*
    304 U.S. 64 (1938) ...........................................................................................9

*Faber v. Menard, Inc.,*
    367 F.3d 1048 (8th Cir. 2004) ...........................................................14, 15, 24

*Falor v. G & S Billboard,*
    2007 WL 1362736 (D.N.J. May 7, 2007)........................................................2

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995) ......................................................................................3, 4

*Fiser v. Dell Computer Corp.*,
    2007 WL 2197515 (N. Mex. Ct. App. Apr. 30 2007) ..................................... 12

*Gannon v. Circuit City Stores, Inc.*,
    262 F.3d 677 (8th Cir. 2001) ....................................................................... 23

*Goodman v. ESPE Am., Inc.*,
    2001 WL 64749 (E.D. Pa. Jan. 19, 2001) ..................................................... 18

*Gras v. Assocs. First Capital Corp.*,
    346 N.J. Super. 42 (App. Div. 2001) ............................................................ 10

*Great W. Mortgage Corp. v. Peacock*,
    110 F.3d 222 (3d Cir. 1997) .................................................................... 19, 20

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000) .............................................................................. passim

*Green Tree, Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1999) ....................................................................................... 7

*Hadnot v. Bay, Ltd.*,
    344 F.3d 474 (5th Cir. 2003) ....................................................................... 24

*Heher v. Smith, Stratton, Wise, Heher and Brennan*,
    170 N.J. 213 (2001) .................................................................................... 21

*Homa v. Am. Express Co.*,
    496 F. Supp. 2d 440 (D.N.J. 2007) .............................................................. 10

*Hutchins v. Un. Parcel Serv., Inc.*,
    2006 WL 2189881 (3d Cir. Aug. 3, 2006) ...................................................... 2

*Iberia Credit Bureau v. Cingular Wireless*,
    379 F.3d 159 (5th Cir. 2004) ....................................................................... 21

*In re Strubbe*,
    347 F.2d 217 (3d Cir. 1965) ........................................................................ 12

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ..................................................................... 14

*James v. McDonald's Corp.*,
    417 F.3d 672 (7th Cir. 2005) ................................................................... 16, 17

*Johnson v. Un. Food and Commercial Workers, Int'l Union Local,*
    828 F.2d 961 (3d Cir. 1987) ............................................................................. 4

*Johnson v. W. Suburban Bank,*
    225 F.3d 366 (3rd Cir. 2000*), cert. denied*, 531 U.S. 1145 (2001) ........................ 7, 9, 13

*KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.,*
    184 F.3d 42 (1st Cir. 1999) .............................................................................. 6

*Kristian v. Comcast Corp.,*
    446 F.3d 25 (1st Cir. 2006) ....................................................................... passim

*LaPrade v. Kidder, Peabody & Co.,*
    246 F.3d 702 (D.C. Cir. 2001) ........................................................................ 15

*Large v. Conseco Fin. Serv. Corp.,*
    292 F.3d 49 (1st Cir. 2002) ............................................................................ 16

*Livingston v. Assocs. Fin., Inc.,*
    339 F.3d 553 (7th Cir. 2003) .......................................................................... 10

*Lloyd v. Hovensa,*
    369 F.3d 236 (3rd Cir. 2004) .......................................................................... 21

*Mirra v. Holland Am. Line,*
    331 N.J. Super. 86 (App. Div. 2000) ................................................................. 20

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985) ...................................................................................... 7

*Morrison v. Circuit City Stores, Inc.,*
    317 F.3d 646 (6th Cir. 2003) ...................................................................... 5, 24

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ......................................................................................... 6

*Muhammad v. County Bank of Rehoboth Beach, Delaware,*
    189 N.J. 1 (2006) .................................................................................. 10, 24

*Musnick v. King Motor Co.,*
    325 F.3d 1255 (11th Cir. 2003) .................................................................. 14, 18

*Nelson v. Insignia/ESG, Inc.,*
    215 F. Supp. 2d 143 (D.D.C. 2002) ................................................................... 8

*Ornelas v. Sonic-Denver T, Inc.*,
    2007 WL 274738 (D. Colo. Jan. 29, 2007) ................................................................. 12

*Paladino v. Avnet Computer Techs., Inc.*,
    134 F.3d 1054 (11th Cir. 1998) ........................................................................... 14

*Parilla v. IAP Worldwide Servs. VI, Inc.*,
    368 F.3d 269 (3d Cir. 2004) ........................................................................ 6, 21

*Perry v. Thomas*,
    482 U.S. 483 (1987) ............................................................................................. 6

*Pro Tech Indus., Inc. v. URS Corp.*,
    377 F.3d 868 (8th Cir. 2004) ................................................................................ 8

*Qualcomm Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006) ........................................................................... 4

*Randolph v. Green Tree Fin. Corp.-Alabama*,
    244 F.3d 814 (11th Cir. 2001) ........................................................................... 10

*Riddlestorffer v. City of Rahway*,
    82 N.J. Super. 423 (Law Div. 1964) .................................................................. 23

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    170 F.3d 1 (1st Cir. 1999) ................................................................................... 13

*Sherwood Jewelers-Newark, Inc. v. Philadelphia Nat'l Ins. Co.*,
    102 F. Supp. 103 (D.N.J. 1952) ......................................................................... 20

*Snowden v. CheckPoint Check Cashing*,
    290 F.3d 631 (4th Cir.), *cert. denied*, 537 U.S. 1087 (2002) ........................... 10

*Spinetti v. Serv. Corp. Int'l*,
    324 F.3d 212 (3d Cir. 2003) ......................................................................... 24, 25

*Stutler v. T.K. Constructors, Inc.*,
    448 F.3d 343 (6th Cir. 2006) ................................................................... 5, 6, 7, 8, 9

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*,
    432 F.3d 1327 (11th Cir. 2005) ....................................................................... 4, 24

*Vandenberg v. Superior Court*,
    21 Cal. 4th 815 (Cal. 1999) ............................................................................... 22

*Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ..................................................................................... 6

**Statutes, Rules and Other Authorities**

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ............................................... 1

Federal Arbitration Act, 9 U.S.C. §2 ............................................................. 6

Local Rule 7.1(d)(1) ....................................................................................... 2

Local Rule 7.1(d)(4) ....................................................................................... 2

Local Rule 7.2(a) ............................................................................................ 2

Local Rule 7.2(b) ............................................................................................ 3

AAA Commercial Arbitration Rule 7(a) ......................................................... 4

AAA Commercial Arbitration Rule 49 .......................................................... 16

Petitioner, Coverall North America, Inc. ("Coverall"), by its attorneys, respectfully submits this Opposition to Denisse Pineda's ("Pineda") Motion to Dismiss Coverall's Petition to Compel Arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*.

## INTRODUCTION

Relying exclusively on a brief that was filed in (and rejected by) another federal court, Pineda contends that this Court should dismiss Coverall's Petition to Compel Arbitration because several portions of the arbitration provision in her franchise agreement supposedly affect her ability to vindicate her statutory rights.  Even if Pineda had submitted a brief that cited cases from **this** jurisdiction, her motion would be legally unfounded.  Pineda and Coverall agreed, when they entered into their arbitration agreement, that all arbitration proceedings would be governed by the Commercial Rules of the American Arbitration Association.  Because those Rules make clear that the arbitrator is to determine all challenges regarding the validity of the arbitration agreement, any challenges Pineda seeks to raise regarding her arbitration agreement must be submitted to the arbitrator, not this Court.  But even if this Court were to assess the validity of Pineda's various arguments, each must fail, as the law in this Circuit supports the enforcement of every provision in the parties' arbitration agreement.  For these and the reasons that follow, Pineda's motion to dismiss should be denied, and an Order should be entered compelling Pineda to submit her claims to arbitration in accordance with the terms of the parties' arbitration agreement.

## ARGUMENT

I.    **PINEDA'S SUBMISSION VIOLATES THIS COURT'S LOCAL CIVIL RULES AND SHOULD BE STRICKEN**

Putting aside its various substantive deficiencies (which are addressed below), Pineda's motion to dismiss should be denied because it violates at least three of this Court's local rules.

First, Pineda's submission violates the requirements of Local Civil Rule 7.2(a), which provides that:

> Affidavits shall be restricted to statements of fact . . . Arguments of the fact and the law shall not be contained in affidavits. Legal arguments and summations in affidavits will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions, or both.

L. Civ. R. 7.2(a). The Certification which Pineda submitted in support of her motion – entitled "Respondent Denisse Pineda's Certification In Support of Motion to Dismiss the Petition of Coverall North America, Inc.'s to Compel Arbitration" (the "Cureton Certification") – consists primarily of the very "legal arguments and summations" that the Local Rule renders impermissible. "Courts of this district strictly and consistently enforce Rule 7.2(a) by striking all statements consisting of legal arguments." *Coastal Group, Inc. v. Westholme Partners*, 1998 WL 34233133, at *6 (D.N.J. Dec. 15, 1998); *see also Hutchins v. Un. Parcel Serv., Inc.*, 2006 WL 2189881, at *8 (3d Cir. Aug. 3, 2006) (affirming both the striking of a declaration containing arguments and legal analysis and the imposition of monetary sanctions); *Falor v. G & S Billboard*, 2007 WL 1362736, at *4 (D.N.J. May 7, 2007) ("Court must disregard any argument of facts and the law contained in the affidavits."). For this reason, the Cureton Certification should be stricken.

Second, Pineda's motion to dismiss violates Local Civil Rule 7.1(d)(1), which makes clear that:

> No application will be heard unless the moving papers and a brief, prepared in accordance with L. Civ. R. 7.2 and proof or acknowledgement of service on all other parties, are filed with the Clerk at least 24 days prior to the noticed motion date. The brief shall be a separate document for submission to the Court, and shall note the motion date on the cover page.

Pineda has not submitted any brief, nor has she submitted a statement pursuant to Local Civil Rule 7.1(d)(4) that no brief is necessary. Pineda has merely filed a Certification from her

counsel which, in turn, attaches a copy of a consolidated brief (the "Massachusetts Opposition") that six (6) plaintiffs attempted to file in opposition to the six (6) different motions to dismiss, transfer or stay that Coverall filed in the lawsuit that is pending in the United States District Court for the District of Massachusetts (the "Massachusetts Action"). That hardly constitutes the "separate document for submission to the Court" that the Local Rules requires.[1]   Pineda's submission should be stricken for this reason as well. *See Developers Surety & Indemnity, Co. v. NDK General Contractors, Inc., et al.*, 2007 WL 542381, at *2 (D.N.J. Feb. 15, 2007) (refusing to hear motion when the requirements of L. Civ. R. 7.1.(d)(1) were not met).

Finally, assuming *arguendo* that the brief that these plaintiffs attempted to file in the Massachusetts Action constituted the "brief" contemplated by this Court's rules, that brief violates Local Civil Rule 7.2(b) in that it exceeds 40 pages. Because briefs over 40 pages "will only be accepted if special permission of the Judge or Magistrate Judge is obtained prior to submission of the brief" (L. Civ. R. 7.2(b)), and because Pineda never sought such permission, Pineda's "brief" should be stricken.

## II.   ALL QUESTIONS REGARDING THE VALIDITY OF PINEDA'S ARBITRATION AGREEMENT MUST BE RESOLVED BY THE ARBITRATOR

While Pineda's attacks on her arbitration agreement are deficient for a variety of reasons, this Court should not address those claims because the parties agreed that all questions regarding the validity of that agreement would be resolved by the arbitrator. The question of who (the arbitrator or the court) decides the validity of an agreement to arbitrate "turns upon what the parties agreed about that matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).   Although a court ordinarily addresses challenges to the validity of an arbitration

---

[1]   Notably, the District of Massachusetts refused to accept the Massachusetts Opposition because it exceeded that District's local rules governing page limitations.

- 3 -

agreement, such challenges must be referred to the arbitrator if there is "clear and unmistakable evidence" that the parties intended the issue of arbitrability to be decided by the arbitrator.  *Id.*

Here, there is such evidence.  In their arbitration agreement, Coverall and Pineda agreed that arbitration would be conducted in accordance with "the then current Rules of the American Arbitration Association for Commercial Arbitration."   Rule 7(a) of the AAA's Commercial Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope **or validity of the arbitration agreement**."  (*See* Exhibit A; emphasis added.)  As the New Jersey state courts and every federal circuit court to address the issue has made clear, "when … parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2nd Cir. 2005); *accord Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989); *Dillon v. Typaldos*, 2006 WL 1381625, at *12 (N.J. Super. Ct. Ch. Div. May 19, 2006) ("where arbitration agreements incorporate the AAA rules, the parties have expressly agreed to allow the arbitrator to decide arbitrability."); *see also Johnson v. Un. Food and Commercial Workers, Int'l Union Local,* 828 F.2d 961, 964 (3d Cir. 1987) ("Because an arbitrator's jurisdiction is rooted in the agreement of the parties, they may agree to submit even the question of arbitrability to an arbitrator.").

The incorporation of the AAA Rules into the parties' arbitration agreement is clear and unmistakable evidence of their intent to submit the issue of arbitrability to the arbitrator.  For this reason alone, Coverall's petition to compel should be granted.

- 4 -

**III.   BECAUSE THE "VINDICATION OF STATUTORY RIGHTS" EXCEPTION ONLY APPLIES WHEN FEDERAL STATUTORY CLAIMS ARE AT ISSUE, PINEDA HAS NOT PRESENTED ANY VIABLE BASIS FOR INVALIDATING ANY PROVISION OF HER ARBITRATION AGREEMENT**

In the event this Court decides to address the merits of Pineda's claims, those claims must nevertheless be rejected, as Pineda's opposition is premised on an inapplicable legal theory. While she does not cite any authority from this Circuit in support of her argument, Pineda contends that this Court can invalidate various provisions of her arbitration agreement if Pineda is able to demonstrate that these provisions affect her ability to vindicate her statutory rights. This argument – which is premised entirely on her reading of the First Circuit's opinion in *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006) – is unfounded, for as the Sixth, Eighth, and D.C. Circuits have all made clear, the "vindication of statutory rights" exception to an otherwise valid arbitration agreement applies only when federal statutory claims are at issue (and none are at issue here).[2]

In *Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343 (6th Cir. 2006), the defendant appealed the district court's denial of its motion to stay proceedings pending arbitration. The district court denied the motion to stay because it determined that the costs of arbitration would effectively bar the plaintiffs from pursuing their state-law claims. In doing so, the court relied on what it perceived to be an exception to the general principle favoring the enforcement of arbitration agreements; namely, the "vindication of statutory rights" exception announced in *Green Tree Fin. Corp.-Alabama v. Randolph.*, 531 U.S. 79 (2000) (and applied by the Sixth Circuit in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003), a case on which Pineda

---

[2]   While *Kristian* applied the vindication of statutory rights exception to federal and state antitrust claims, it never addressed whether that test was properly applied to state statutory claims standing alone.

relies).  Reversing the district court, the Sixth Circuit held that the district court erred when it applied the *Green Tree* "exception" to the plaintiffs' state law claims.  The *Stutler* Court held that applying that exception to state law claims would actually violate §2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §2, because the exception would not apply to all contracts.

*Stutler's* conclusion finds ample support in both the Supreme Court cases that formulated the "vindication of statutory rights" exception and in §2 itself.  While federal law is the source of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the validity of agreements to arbitrate is, as a general rule, governed by state law, subject to §2 of the FAA.  *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *accord Campbell v. General Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005).  Under §2, "a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of **any** contract.'"  *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (quoting 9 U.S.C. §2) (emphasis added).  Accordingly, "[s]tate law, whether of legislative or judicial origin, is applicable **if** that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."  *Casarotto v. Doctor's Assocs.*, 517 U.S. 681, 685 (1996) (emphasis in original).  In other words, "[o]nly 'generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening §2 [of the FAA].'"  *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50 (1st Cir. 1999) (quoting *Casarotto*, 517 U.S. at 687); *accord Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (stating that under §2

of the FAA, a court may "hold that an agreement to arbitrate is unenforceable based on a generally applicable contractual defense, such as unconscionability.").

The "vindication of statutory rights" exception is **not** a state-law principle that applies to all contracts. Rather, it was formulated by the Supreme Court in an attempt to "reconcile the liberal [federal] policy favoring arbitration agreements with the important rights created and protected by federal civil rights legislation." *Stutler*, 448 F.3d at 346 (quoting *Morrison*, 317 F.3d at 652-53). The trilogy of decisions which fashioned the exception – *Green Tree*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1999), and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) – underscore this point. In *Green Tree*, the Court expressed concern about arbitration costs precluding a party "from effectively vindicating her **federal statutory rights** in the arbitral forum." 531 U.S. at 90 (emphasis added). *Gilmer* and *Mitsubishi* concerned a somewhat different issue – namely, whether a party could be compelled to arbitrate claims under the Age Discrimination in Employment Act and the Sherman Act, respectively – but their resolution of this issue reflects the same concern expressed in *Green Tree* over the primacy of federal rights. Concluding that both types of statutory claims were arbitrable, *Mitsubishi* and *Gilmer* held that "'having made the bargain to arbitrate, [a] party should be held to it unless **Congress itself** has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi*, 473 U.S. at 626) (emphasis added); *accord Johnson v. W. Suburban Bank*, 225 F.3d 366, 370 (3rd Cir. 2000*), cert. denied*, 531 U.S. 1145 (2001).

For this reason, the vindication of statutory rights exception is "clearly limited" to instances "where **federal statutorily provided rights are affected**." *Stutler*, 448 F.3d at 346 (emphasis added). Where no such rights are at issue, a party seeking to challenge the

enforceability of its agreement to arbitrate can look **only** to general state law defenses. *Id.*; *accord Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 873 (8th Cir. 2004). The D.C. Circuit – which issued another opinion on which Pineda relies (*Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997)) – has recognized the very same limits to the exception. In *Cole* (a pre-*Green Tree* decision), the D.C. Circuit created a rule that precluded employers from requiring employees to pay all or part of an arbitrator's fees for arbitrating federal statutory claims, regardless of the employee's actual ability to pay. *Cole*, 105 F.3d at 1483. However, like *Green Tree*, *Cole* is premised on that Court's conclusion that requiring employees to pay for an arbitrator "would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum . . . ." *Cole*, 105 F.3d at 1484. For that reason, the D.C. Circuit and District Courts have since made clear that *Cole* **does not apply** where federal statutory claims are not at issue. *See Brown v. Wheat First Secs., Inc.*, 257 F.3d 821, 824-25 (D.C. Cir. 2001) (*Cole's* holding does not apply to "non-statutory claims"; "[i]t would be quite a contortion of *Cole* to find that it had addressed a far broader subject than the case that it set out simply to refine"); *Nelson v. Insignia/ESQ, Inc.*, 215 F. Supp. 2d 143, 156-57 (D.D.C. 2002) ("*Cole* was only intended to apply to Congressionally enacted statutory rights" and does not apply to common-law claims or claims based on state statutes).[3]

---

[3]       All of the other decisions cited by Pineda involve federal statutory claims.

There are no federal statutory claims at issue in this case.  Therefore, to the extent she seeks to invalidate her agreement to arbitrate, Pineda must look to state law.[4]  Because she has not cited any generally applicable contract defense in support of her efforts to evade her arbitration agreement, her challenges must fail, and Coverall's petition to compel arbitration should be granted.

## IV.    EVEN UNDER PINEDA'S PROFFERED STANDARD, EACH PROVISION IN THE ARBITRATION AGREEMENT SHOULD BE ENFORCED

### A.    The Class Action Waiver Is Fully Enforceable[5]

Again relying on *Kristian*, Pineda seems to assert that the class action waiver in her arbitration agreement is *per se* unenforceable.  Even if that was the rule in the First Circuit (and as shown below it is not), it is not the rule in this Circuit.  In fact, both the Third Circuit and this Court have repeatedly made clear that the right to proceed as a class "may be waived by agreeing to an arbitration clause."  *W. Suburban Bank*, 225 F.3d at 369 (holding that claims under the Truth in Lending Act and Electronic Fund Transfer Act were arbitrable even when the plaintiffs sought to bring their claims on behalf of multiple claimants); *Delta Funding Corp. v. Harris*, 396 F. Supp. 2d 512, 523-24 (D.N.J. 2004) (rejecting the argument that the class action restriction

---

[4]      As *Stutler* recognized, applying the *Green Tree* principle to state law claims would violate *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), which provides that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."  Because "Congress explicitly preserved the applicability of state law defenses to arbitration agreements," applying the *Green Tree* rationale – a federal principle – to state-law claims would contravene *Erie*.  *Stutler*, 448 F.3d at 347.

[5]      The other opinion referenced by Pineda – *Skirchak v. Dynamic Research Corp.* – struck a class action waiver because the court determined that the arbitration agreement was both procedurally and substantively unconscionable.  Pineda never contends that her arbitration agreement meets either prong of that test.  While Judge Lasker issued an electronic order denying the defendant's motion for reconsideration of that ruling, he never "reconfirmed his decision under the *Kristian* analysis," as Pineda suggests.  In any event, the *Skirchak* opinion is on appeal to the First Circuit.  [Docket No. 06-2136.]

frustrated the party's vindication of statutory rights and enforcing the arbitration agreement in a case involving a claim under the New Jersey Consumer Fraud Act); *accord Homa v. Am. Express Co.*, 496 F. Supp. 2d 440, 446 (D.N.J. 2007) (noting that courts, including the United States Supreme Court, enforce arbitration agreements with class action waivers and dismissing New Jersey Consumer Fraud Act claim in favor of arbitration). The New Jersey state courts are fully in accord with this approach, and have enforced class action waivers even as to statutory claims. *See Gras v. Assocs. First Capital Corp.*, 346 N.J. Super. 42 ( App. Div. 2001) (holding that an arbitration clause was enforceable even though it made a class action based on the New Jersey Consumer Fraud Act unavailable to the plaintiffs).[6]

But even if it were applicable, the class action waiver in the Franchise Agreement is fully enforceable under *Kristian*. Before commencing its analysis of the class-action waiver before it, *Kristian* discussed what it acknowledged was the majority view of the federal appellate courts; namely, that arbitral class-action waivers are enforceable.[7] *Kristian*, 446 F.3d at 55. *Kristian* never took issue with the majority's reasoning. Instead, *Kristian* explained why the majority's

---

[6] *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1 (2006), which Pineda mentions in a string cite, is inapplicable here. The *Muhammad* court held that a class arbitration waiver was unconscionable when addressing adhesive consumer contracts where "low-value consumer claims" were involved. *Delta Funding Corp. v. Harris*, 189 N.J. 28, 47 (2006) (interpreting *Muhammad* and holding that a class-arbitration waiver was not unconscionable). For this reason, *Muhammad* (which involved damages that were less than $600) specifically limited its holding to the "precise issue" before it. *Muhammad*, 189 N.J. at 22. This is not a consumer case but a franchise case, and as set forth below, Pineda's supposed damages are in the thousands of dollars. *Muhammad* is therefore inapposite.

[7] *See, e.g, Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir.), *cert. denied*, 537 U.S. 1087 (2002); *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483 (6th Cir. 2001); *Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 819 (11th Cir. 2001).

rationale did not apply to the specific antitrust case before it. *Kristian* noted that the appellate cases which had enforced class-waivers involved the application of a comparatively uncomplicated statute (the Truth in Lending Act) to a specific transaction. *Id.* at 57. Whether a company's conduct violated the antitrust laws was, in contrast, "a complicated question of fact" that required a plaintiff "to undertake an elaborate factual inquiry ...." The court characterized the antitrust laws that applied to those facts as "equally complex." *Id.*

Because of the "sheer complexity" of antitrust cases (*id.* at 57), *Kristian* concluded that enforcing the class-action bar would effectively prevent the plaintiffs from vindicating their statutory rights. *Id.* at 61. Several facts reinforced the court's conclusion. First, the plaintiffs had submitted affidavits from three experts which established that the expert witness fees for an antitrust case would be a "a minimum of $300,000," and possibly in excess of $600,000. *Id.* at 58. These affidavits (which also noted the necessity of expert testimony) were "uncontested and unopposed." *Id.* Second, prosecuting the antitrust claims would entail the expenditure of "several million dollars of attorneys' time." *Id.* Finally, the court noted that even if successful, each individual plaintiff's recovery would range from "a few hundred dollars to perhaps a few thousand dollars" **after** trebling. *Id.* at 54. Relying on the disparity between the potential recovery and the costs of litigation, the court concluded that it was unlikely that an attorney would take such an antitrust case on an individual basis. *Id.* at 59.

*Kristian*'s rationale is inapplicable to this case. First, this is hardly a complex case. Pineda's allegations fall into two categories: (i) garden-variety fraud and breach of contract claims (*see* Second Amended Complaint ¶¶11-40); and (ii) claims based on Pineda's allegation that he should be treated as an employee under state wage laws rather than as an independent

contractor.[8]  (*Id.* at ¶¶41-54.)  Neither the facts nor the law associated with those claims is complex.  Prosecuting them will likely not require any expert testimony, nor will it entail the expenditure of "several million dollars of attorneys' time." *Kristian*, 446 F.3d at 56.

Second, Pineda presents a far different record than the one presented in *Kristian*.  In stark contrast to the plaintiffs in *Kristian*, who presented detailed evidence regarding the costs of prosecuting their claims, Pineda has proffered absolutely **nothing** in support of her claim that proceeding individually will prevent him from vindicating her statutory rights other than her counsel's unsupported opinion that other, unidentified franchisees "may" not have the resources to pursue their claims individually, "may" fear "retaliation" from Coverall, or "may" be unable to find competent counsel to take their claims on an individual basis.  (Massachusetts Opposition at p. 11.)  *See In re Strubbe*, 347 F.2d 217, 218 (3d Cir. 1965) (statements by counsel in a brief are not evidence).  Where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92; *see also Blair v. Scott Specialty Glass*, 283 F.3d 595, 607 (3rd Cir. 2002).  Pineda has doing nothing to satisfy that burden.  *See Fiser v. Dell Computer Corp.*, 2007 WL 2197515, at *14 (N. Mex. Ct. App. Apr. 30 2007) (distinguishing *Kristian* because the plaintiff had not made any showing as to the costs of arbitrating his claim individually); *Ornelas v. Sonic-Denver T, Inc.*, 2007 WL 274738, at **6-7 (D. Colo. Jan. 29, 2007) (same).

---

[8]      Pineda's claim that the Massachusetts Supreme Judicial Court ruled that a Coverall franchisee was an employee is incorrect.  In *Coverall North America, Inc. v. Commissioner of the Division of Unemployment Assistance*, the Court determined that Coverall had not met its burden of showing that a decision of the division of unemployment assistance (which concluded that a particular franchisee was not an independent contractor) was erroneous.  It should be noted that the Internal Revenue Service determined that the same franchisee was an independent contractor.

Third, Pineda should have no difficulty locating an attorney to take her claims on an individual basis. Pineda attached to the Massachusetts brief an excerpt from Coverall's offering circular that describes the disputes that have arisen between Coverall and its franchisees. (Massachusetts Opposition at p. 2, n.3.) According to Pineda, this excerpt demonstrates that "[n]umerous other cases have been brought against Coverall by its franchisees around the country" alleging essentially the same claims at issue in this action. (*Id.*) If that is the case, there is no reason to believe that Pineda could not do the same. This is also not a case where the plaintiff is seeking only a few hundred dollars. While Pineda has carefully avoided disclosing the damages she is seeking, her counsel made clear in a prior lawsuit that she believed that the plaintiffs in that suit (who asserted the very same claims) were each entitled to tens of thousands of dollars in damages, before treble damages, attorneys' fees and costs. Finally, the Franchise Agreement entitles the prevailing party to recover its attorneys' fees. As the Third Circuit held in West Suburban Bank, that fact supports the enforcement of a class-action waiver. *W. Suburban Bank*, 225 F.3d at 374 (because attorneys' fees are recoverable under TILA, requiring the plaintiffs to arbitrate individually will not "choke off the supply of lawyers willing to pursue claims on behalf" of plaintiff). Pineda thus has not demonstrated that prosecuting her claims individually will prevent him from vindicating her claimed statutory rights.

### B.   Pineda's Assertions Concerning The Costs Of Arbitration Are Not A Valid Basis For Relieving Pineda Of Her Agreement To Arbitrate

Relying on *Green Tree*, Pineda next contends that this Court should not enforce her arbitration agreement because the costs of arbitration (which Pineda agreed to split with Coverall) may deprive her of the chance to vindicate her claimed statutory rights. *But see Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 16 (1st Cir. 1999)

(recognizing that "arbitration is often far more affordable to plaintiffs and defendants alike than is pursuing a claim in court."). Pineda's argument fails for several reasons.

### 1.   *A Claim Of Excessive Costs May Be Raised Only When Federal Statutory Claims Are At Issue*

First, as noted above, there are no federal rights at issue in this case. Rather, Pineda asserts only state law claims. Her *Green Tree* "defense" is therefore inapplicable.[9]

### 2.   *Pineda Has Not Proved That She Is Unable To Afford Arbitration*

Second, even if an analysis of the cost-splitting provision were appropriate, Pineda has not met "the high threshold" of proving that the provision prevents her from being able to vindicate her statutory rights. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1054 (8th Cir. 2004). "Where...a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. A party seeking to avoid arbitration must "present specific evidence of likely arbitrators' fee and [his] financial ability to pay those fees so

---

[9]      Pineda cites a number of decisions which address the enforceability of cost-splitting provisions. All of them deal with federal statutes. Moreover, aside from *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) – which is premised on California's unique policy that "a contract to arbitrate between an employer and an employee . . . raises a presumption of substantive unconscionability" – and *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir. 2001) – which enforced a cost-splitting provision in an employment case – all of those decisions were based on those Courts' then-belief that a provision that required employees to pay all or part of an arbitrator's fees for arbitrating federal statutory claims was unenforceable, regardless of the employee's actual ability to pay. (The issue was not addressed by the majority's opinion in *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998), but rather by a concurring opinion.) As the Eleventh Circuit recognized in a post-*Paladino* decision, and as *Bradford* makes clear, these pre-*Green Tree* decisions are inconsistent with *Green Tree*, which held that the party seeking to avoid arbitration based on its costs is required to come forward with **individualized** proof regarding those costs and his or her alleged inability to pay. *See Musnick v. King Motor Co.*, 325 F.3d 1255, 1259-1260 (11th Cir. 2003); *Bradford*, 238 F.3d at 549.

that the court can determine whether the arbitral forum is accessible to the party. ... If the party does not meet its burden, the district court must honor the arbitration agreement and compel arbitration." *Faber*, 367 F.3d at 1053, 1054; *see also Harris*, 396 F. Supp. 2d at 521 ("The burden is on the party opposing arbitration to show that the cost would render it an ineffective forum.").

Pineda has fallen far short of meeting her burden.  Indeed, the materials submitted by Pineda – which consist of (i) a reference to the administrative fees charged by the American Arbitration Association in employment cases, and (ii) a citation to a case discussing the average daily rates for arbitrators – are the very same "evidence" the Supreme Court found wanting in *Green Tree*, 531 U.S. at 90 n.6, 91 (affidavit that discussed the filing fees generally imposed by the AAA and the average daily fees for an arbitrator "provide[d] no basis on which to ascertain the actual costs and fees to which [the plaintiff] would be subject in arbitration" and were insufficient "to justify the invalidation of an arbitration agreement").  Because Pineda has done nothing to enable this Court to determine what the anticipated costs would be for her to arbitrate her claims individually, or whether she can afford such costs, her agreement to arbitrate must be enforced. *See Blair*, 283 F.3d at 608; *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702 (5th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003) (unsupported claim regarding effect of costs of arbitration was insufficient); *Faber*, 367 F.3d at 1054; *Bradford,* 238 F.3d at 556; *LaPrade v.*

*Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001); *James v. McDonald's Corp.*, 417 F.3d 672, 679 (7th Cir. 2005).[10]

### 3. *Because Pineda Has Not Availed Herself Of The AAA's Hardship Procedures, She Should Not Be Permitted To Complain About Costs*

Finally, Pineda has made no effort to reduce the supposedly high costs of arbitration. Rule 49 of the AAA's Commercial Arbitration Rules provides that "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." In fact, if a party's gross income falls below 200% of the federal poverty guidelines, the AAA may waive its fee entirely. *See* American Arbitration Association, Administrative Fee Waivers and Pro Bono Arbitrators Services (updated January 1, 2003), available at www.adr.org. The AAA also permits a party to request an arbitrator to serve at a reduced rate or on a pro bono basis – even if that party fails to qualify for a waiver or deferral of the AAA's administrative fees. *Id.* As numerous courts have recognized, these remedies are sufficient to protect parties from any excessive arbitration costs. *See Am. Heritage Life Ins.*, 294 F.3d at 712; *Boyd v. Town of Hayneville*, 144 F. Supp. 2d 1272, 1280 (M.D. Ala. 2001); *Dabney v. Option One Mortgage Corp.*, 2001 WL 410543, at *4 (E.D. Pa. Apr. 19, 2001). Having failed to take **any** steps to reduce the supposedly high costs of arbitration, Pineda may not use those costs as a basis for evading her agreement to arbitrate. *See James*, 417 F.3d at 679; *Dobbins*, 198 F.3d at 717.

_____

[10]     Had she satisfied her burden and demonstrated that she was truly unable to afford the minimal costs of arbitration, Coverall would have fronted all of the costs and fees that Pineda was unable to afford. *See Blair*, 283 F.3d at 610 (once the plaintiff makes an adequate showing of prohibitive arbitration expenses, the burden switches to the defendant to either prove otherwise or "offer to pay all of the arbitrator's fees."); *Harris*, 396 F. Supp. 2d at 522 (party could not demonstrate "the cost would render arbitration an ineffective forum in light of Delta's willingness to pay any and all costs"); *accord Large v. Conseco Fin. Serv. Corp.*, 292 F.3d 49, 56-57 (1st Cir. 2002) (holding that it was not "possible" for plaintiffs to sustain their burden under *Green Tree* where the defendant agreed to cover the costs of arbitration); *Dobbins v. Hawk's Enters.*, 198 F.3d 715, 717 (8th Cir. 1999).

**C.**   **The Attorneys' Fees Provision Does Not Prevent Arbitration of this Dispute**

**1.**   ***New Jersey Enforces Contractual Fee Provisions***

Pineda's next assertion – that the prevailing party attorneys' fee provision is unenforceable – effectively asks this Court to create a *per se* rule that such clauses are unenforceable in any dispute (whether arbitrable or not) that involves a statute that does not expressly grant a prevailing defendant the right to recover fees.[11]   Such a rule is necessary because, according to Pineda's counsel, the threat of having to pay such fees might deter a plaintiff from pursuing such claims.   Suffice to say, there is no support for such an assertion.

While New Jersey generally follows the "American Rule," there is no doubt that the parties may provide in an agreement that, in certain circumstances, one of them may be obligated to pay the other's attorneys' fees incurred in asserting rights under the agreement.   *See Anders v. FPA Corp.*, 164 F.R.D. 383, 390 (D.N.J. 1995) (attorneys' fees are recoverable when authorized by statute, court rule, or contract.).   Here, the parties have done just that.   The parties agreed, in Paragraph 21.C of the Franchise Agreement, that "[s]hould either Party incur attorney's fees in order to enforce the terms and conditions of this Agreement, including post-term covenants, whether or not an arbitration proceeding is instituted, the prevailing party shall be entitled to reimbursement by the other party of all litigation costs, including attorneys' fees."   Pineda has

---

[11]   Pineda asserts that the fee provision makes her arbitration agreement unenforceable because it "imposes additional significant risks on parties initiating arbitration that they would not be exposed to in court." (Massachusetts Opposition at p. 16.) But that is simply wrong. By its terms, the fee provision applies "whether or not an arbitration proceeding is instituted . . . ." (Franchise Agreement ¶21.C.) Accordingly, the prevailing party fee provision would be valid – and would expose Pineda to the same so-called "risk" – whether this matter proceeded in court or in arbitration.   Accordingly, this Court should not consider the parties' fee agreement in determining whether they should be required to arbitrate their dispute. *See Cooper v. MRM Inv. Co.*, 367 F.3d 493, 511 (6th Cir. 2004) ("[t]he court must evaluate the likely cost of arbitration not in absolute terms, but **relative to the likely costs of litigation**)" (emphasis in original); *accord Bradford*, 238 F.3d at 556; *James.*, 417 F.3d at 680.

- 17 -

cited no New Jersey case which questions the validity of such a provision. That is because none exists.

Pineda's attempt to find support for her position in *Kristian* is wholly unavailing. In *Kristian*, the First Circuit struck a provision of an arbitration agreement that **precluded** the recovery of attorneys' fees because the federal antitrust statutes expressly allow a prevailing plaintiff to recover such fees. *Kristian*, 446 F.3d at 54. There is absolutely nothing in *Kristian* which questions the enforceability of a provision (like the one at issue here) that **allows** both parties to recover their attorneys' fees.

### 2. *The Risk That Pineda Might Have To Pay Fees Is Too Speculative To Warrant Invalidating Her Arbitration Agreement*

*Green Tree* makes clear that "[t]he 'risk' that [a party] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." 531 U.S. at 91. Pineda's assertion that she should not have to arbitrate because she might have to pay Coverall's fees is wildly speculative. None of Pineda's claims has been arbitrated, and Coverall has not been declared the prevailing party. Further, no arbitrator has awarded Coverall its fees against Pineda, nor is there any certainty that, if such an award were made, Coverall would seek to enforce it. As one court observed:

> [A]t this point Plaintiff has not been assessed with any fees, nor is it certain that he ever will be. [Citations omitted.] Given these facts, we cannot conclude that the arbitration agreement constitutes a barrier to vindication of Plaintiff's rights. Plaintiff's speculation about prohibitive costs is just that -- speculation; this is not enough to invalidate an otherwise enforceable arbitration provision.

*Goodman v. ESPE Am., Inc.*, 2001 WL 64749, at *4 (E.D. Pa. Jan. 19, 2001); *accord Musnick v. King Motor Co.*, 325 F.3d 1255, 1260 (11th Cir. 2003) (collecting cases).

- 18 -

**D.     The Remedy Limitation And The Punitive Damages Waiver Do Not Make Pineda's Arbitration Agreement Unenforceable**

Pineda's claim that the remedy limitation in ¶8 of the Franchise Agreement is unenforceable is premised on a misconception as to its scope.  Paragraph 8 only governs the damages Pineda is entitled to if Coverall failed to offer her the amount of initial business it was required to offer under the Franchise Agreement.  Accordingly, Paragraph 8 only governs Pineda's claim for breach, and in no way limits impermissibly any of Pineda's claimed statutory rights.

Furthermore, this claim is appropriately resolved by the arbitrator, not this Court.  "[T]he waiver of state law rights unrelated to the provision of a judicial forum" cannot be asserted to avoid an arbitration agreement.  *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 231 (3d Cir. 1997).  "Rather, the party challenging the validity of such waivers must present her challenge to the arbitrator, who will determine the validity and enforceability of the waiver of asserted state law rights."  *Id.*  (holding that it was for the arbitrator to determine whether the party had waived her rights to attorneys' fees and punitive damages).  Any challenge as to the enforceability of the remedy limitation should therefore be addressed by the arbitrator.

Pineda's claim that the arbitration agreement is unenforceable because it precludes an award or exemplary of punitive damages is likewise incorrect.  First, as *Kristian* recognized, punitive damages are not the same as treble damages.  *Kristian*, 446 F.3d at 40.  As a result, the punitive damages waiver does not affect any "entitlement" to treble damages under any statute.  Second, as noted above, "[t]he availability of punitive damages is not relevant to the nature of the forum in which the complaint will be heard . . . [t]hus, availability of punitive damages cannot enter into a decision to compel arbitration."  *Peacock*, 110 F.3d at 232.  Pineda's challenge to the enforceability of this waiver must therefore be presented to the arbitrator.

- 19 -

### E.      The Contractual Limitations Period Is Enforceable

While she cites no supporting New Jersey law, Pineda next contends that the Franchise Agreement's two-year contractual limitations period – which concededly applies to both parties, and which applies regardless of the forum for this dispute – is unenforceable. This argument, which is premised entirely on opinions from the Ninth Circuit, ignores New Jersey authority entirely. The law is settled in New Jersey that contracting parties may agree upon a shorter limitations period as long as it is reasonable. *See Sherwood Jewelers-Newark, Inc. v. Philadelphia Nat'l Ins. Co.,* 102 F. Supp. 103, 104 (D.N.J. 1952) (enforcing 12-month contractual limitations provision). This is true even if the limitations period shortens the time for asserting statutory claims. *See Mirra v. Holland Am. Line*, 331 N.J. Super. 86, 91 (App. Div. 2000) (180-day contractual limitations provision was reasonable and barred plaintiff's claim under the New Jersey Consumer Fraud Act).

Moreover, Pineda's argument asks this Court to engage in the very analysis that the Third Circuit held impermissible in *Peacock. See Peacock*, 110 F.3d at 231-32 ("here we leave it to the arbitrator to determine whether Peacock has waived her right to attorney's fees or to a two-year statute of limitations."). To the extent Pineda believes that the contractual limitations period is unenforceable, that argument must be made to the arbitrator.

### F.      The Confidentiality And No-Collateral-Estoppel Provisions Are Enforceable

Pineda next asserts that the arbitration agreement is unenforceable because it requires that awards be kept confidential and precludes awards from having preclusive effect in arbitrations between Coverall and other parties. However, Pineda never explains why these provisions are unenforceable as applied to her or, more importantly, what statutory rights (if any) they implicate. If this Court rejects Pineda's attempt to evade her agreement to arbitrate, Pineda and Coverall will submit their claims to an arbitrator who will render an award. Whether that award

- 20 -

is confidential or has preclusive effect in proceedings involving **other** parties will have no impact on Pineda or her claimed statutory rights.

In any event, Pineda's claim that the confidentiality provision is unenforceable is legally unfounded. Pineda's argument is premised entirely on *AT&T Corp. v. Ting*, 319 F.3d 1126 (9th Cir. 2003). But *Ting* is premised on the conclusion that a confidentiality requirement violated a provision of California's Consumer Legal Remedies Act. That Act does not apply here. More importantly, *Ting* is out of step with the great weight of authority. *See, e.g., Lloyd v. Hovensa*, 369 F.3d 236, 275 (3rd Cir. 2004); *Iberia Credit Bureau v. Cingular Wireless*, 379 F.3d 159, 175-76 (5th Cir. 2004); *Casey v. Gulfstream Aerospace*, 428 F.3d 1359, 1378-79 (11th Cir. 2005). The fact that the majority of courts have rejected *Ting* is not surprising. Arbitration is, by nature, a **private** means of dispute resolution. In fact, privacy is one of the main reasons parties choose to arbitrate. *See Heher v. Smith, Stratton, Wise, Heher and Brennan*, 170 N.J. 213, 221 (2001) ("arbitration is a preferred method of dispute resolution because, among other reasons, it combines the advantages of privacy and efficiency."). A provision that reinforces one of the primary benefits of arbitration can hardly be deemed unenforceable. *See Parilla*, 368 F.3d at 279-80 (holding that a confidentiality provision in an arbitration agreement was not unconscionable because "there is nothing inherent in confidentiality that favors or burdens one party *vis-à-vis* the other" and it would not impede any party's ability to obtain relief).

The provision which provides that the arbitrator's award shall only be binding on Pineda and Coverall is likewise enforceable. Pineda notably fails to cite to any case from **any** jurisdiction which supports her argument that the provision is not enforceable. Arbitration is an informal process. Arbitrators are not bound by the rules of evidence or, as a general rule, by judicial precedent, their decisions are subject to limited review, there is usually no transcript of

the proceedings, and arbitrators do not have to give reasons for their decisions.  Coverall has

accepted these disadvantages because of the many advantages that arbitration affords.  However,

it has not accepted, nor would any rational party accept, the risk that the decision of one

arbitrator would be deemed binding on Coverall with respect to its 8000 other franchisees.  As

the California Supreme Court explained, agreeing to arbitrate a dispute

> does not mean each arbitral party also consents that issues decided against him by
> this informal, imprecise method may bind him, in the same manner as a court
> trial, in *all future* disputes, *regardless* of the stakes, against *all* adversaries, known
> and unknown.  On the contrary, common sense weighs against the assumption
> that parties contemplate such remote and collateral ramifications when they agree
> to arbitrate controversies between themselves. . . .  *The very fact* that arbitration
> is by nature an informal process, not strictly bound by evidence, law, or judicial
> oversight, suggests reasonable parties would hesitate to agree that the arbitrator's
> findings in their own dispute should thereafter bind them in cases involving
> different adversaries and claims.

*Vandenberg v. Superior Court*, 21 Cal. 4th 815, 832 (Cal. 1999) (emphasis in original).[12]  This

Court thus should not excuse Pineda from arbitrating her dispute, privately, with Coverall.

## V.    IF THIS COURT FINDS ANY PROVISION IN THE ARBITRATION AGREEMENT UNENFORCEABLE, THAT PROVISION SHOULD BE SEVERED AND THE OBLIGATION TO ARBITRATE PRESERVED

If this Court deems any provision in the arbitration agreement unenforceable, the

appropriate remedy is not the wholesale avoidance of the agreement, but the severance of any

unenforceable provision.  The severability of a contractual provision depends upon the intent of

---

[12]    While Pineda claims that this provision is contrary to the purposes of collateral estoppel, the usual justifications for the application of collateral estoppel do not apply when a third party seeks to use an arbitration award entered in a proceeding to which it was not a party (*i.e.*, non-mutual offensive collateral estoppel).  First, a private arbitrator's award is outside the judicial system.  Therefore, denying the award collateral estoppel effect has no adverse impact on judicial integrity.  Second, because private arbitration does not involve the use of the judicial system, later re-arbitration does not entail a duplication of judicial resources.  Finally, when collateral estoppel is invoked by a nonparty to the arbitration, the doctrine does not serve the policy against harassment by vexatious litigation.  Rather, the doctrine is being invoked by someone seeking to gain vicarious advantage from a litigation victory won by another party.

the contracting parties.  *Riddlestorffer v. City of Rahway,* 82 N.J. Super. 423, 428 (Law Div. 1964).  Here, the parties clearly intended to preserve their agreement to arbitrate.  Paragraph 28 of the Franchise Agreement provides that "[i]f any term, provision, covenant, or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated."  That clear language should be enforced as written.[13]

Severing any unenforceable provision would not only be consistent with New Jersey law and the parties' agreement, but with the policies underlying the FAA.  *See Kristian,* 446 F.3d at 62 (severing an unenforceable provision and "saving the arbitral forum" is "consistent with the federal policy favoring arbitration").  "If the offensive terms [of an arbitration agreement] are severable, then the court must compel arbitration according to the remaining, valid terms of the parties' agreement.  The court should deny [a] motion to compel arbitration **only** where the invalid terms of the arbitration clause render the **entire** clause void as a matter of state law."  *Terminix,* 432 F.3d at 1331 (emphasis added); *accord Spinetti v. Serv. Corp. Int'l,* 324 F.3d 212,

---

[13]       Pineda's claim that any unenforceable provision is not severable is premised either on Ninth Circuit cases construing California law or a vacated opinion from the Eleventh Circuit (*Perez*) that involved an arbitration agreement that did not include a severability clause.  The Ninth Circuit opinions simply cannot be reconciled with the policies under the AAA, as the Eighth Circuit has noted:

> [I]f we were to hold entire arbitration agreements unenforceable every time a particular term is held invalid, it would discourage parties from forming contracts under the FAA and severely chill parties from structuring their contracts in the most efficient manner for fear that minor terms eventually could be used to undermine the validity of the entire contract.  Such an outcome would represent the antithesis of the liberal federal policy favoring arbitration agreements.

*Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 682 (8th Cir. 2001) (internal quotation omitted).

220 (3d Cir. 2003); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003); *Morrison*, 317 F.3d

at 675; *Faber*, 367 F.3d at 1054; *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024 (11th

Cir. 2003); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 84-5 (D.C. Cir. 2005); *Muhammad*,

189 N.J. at 26 (holding that the contracts reflected an intent that the arbitration agreement would

be implemented to the extent certain provisions of the arbitration agreement were barred).

Because the severance of any supposedly unenforceable provision would not render the rest of

the arbitration agreement void, severance of any offending provision – followed by an order

compelling arbitration – remains the proper remedy.

## VI.   PINEDA'S REQUEST, IN THE ALTERNATIVE, THAT THIS ACTION BE STAYED SHOULD BE DENIED

While she cites no authority in support of her request, Pineda asserts that this Court

should not address Coverall's Petition to Compel until the Massachusetts court rules on the

enforceability of Coverall's arbitration agreement.  Specifically, Pineda asserts that "the issue of

whether arbitration may be compelled against Coverall's [alleged] cleaning workers is already

pending in the Awuah action and will properly be addressed there" and "[i]n the interests of

judicial economy and efficiency, there is no reason for both this Court and the Awuah court to

address this same issue." (Cureton Certification at p. 2.)  Pineda is wrong.  The question of the

enforceability of Pineda's agreement to arbitrate – a question that is governed by New Jersey law

– is **not** before the Massachusetts court.  The only dispositive motions currently before the

Massachusetts court are those filed by Coverall, and the only motion that Coverall has filed with

respect to Pineda is a request that the Massachusetts court stay any proceedings as to Pineda until

**this Court** addresses the Petition to Compel.  Indeed, the Massachusetts court does not even

have the power to grant Coverall the relief it is seeking – namely, an Order compelling Pineda to

submit her disputes to arbitration in New Jersey in accordance with the terms of the parties'

arbitration agreement.  *See Bosworth v. Ehrenreich*, 823 F. Supp. 1175, 1180 (D.N.J. 1993) (transferring venue to New York and holding that the New Jersey district court could not compel arbitration under agreement which provided for arbitration in New York).  Moreover, even if the Massachusetts court determined that Coverall's arbitration agreement was unenforceable as to the franchisees who reside in Massachusetts, that determination would have no impact on Coverall's petition to compel Pineda to arbitrate.  Not only do questions as to the enforceability of arbitration agreements involve fact-specific inquiries that must be analyzed on a case-by-case basis, but those inquiries are governed by state law.  *See Spinetti*, 324 F.3d at 216 (recognizing the "fact-specific inquiry" that is required when a party claims that arbitration costs offend public policy and the appropriateness of the "case-by-case" teachings of *Green Tree*).  And as noted above, New Jersey law varies from the law in Massachusetts in several respects.  Pineda's alternate request that this action be stayed should therefore be denied.

## CONCLUSION

For the foregoing reasons, Pineda's motion to dismiss Coverall's petition to compel arbitration should be denied, and Coverall's petition to compel arbitration should be granted.

Dated: September 25, 2007

/s/ Steven F. Gooby
Steven F. Gooby (SG2981)
DLA PIPER US LLP
Two Tower Center Blvd., Suite 1600
East Brunswick, New Jersey  08816-1100
(732) 590-1850

Norman M. Leon (*pro hac vice application pending*)
John A. Hughes
DLA PIPER US LLP
203 North LaSalle Street, Suite 1900
Chicago, Illinois  60601
(312) 368-4000

- 25 -

# EXHIBIT A

Commercial Arbitration Rules                                                    Page 1 of 1

R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.