### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **COVERALL NORTH AMERICA, INC.,**<br><br>     **Petitioner,**<br><br>  **vs.**<br><br>**DENISSE PINEDA,**<br><br>     **Respondent.** | **Civil Action No.:  07-03012**<br><br>**RESPONSE TO DENISSE PINEDA'S OPPOSITION TO COVERALL NORTH AMERICA, INC.'S PETITION TO COMPEL ARBITRATION**<br><br>**ORAL ARGUMENT REQUESTED** |

**MORISON ANSA HOLDEN**
**ASSUNCAO & PROUGH, LLP**
**(A California Limited Liability Partnership)**
Two Tower Center Blvd., Suite 1600
East Brunswick, New Jersey 08816-1100
(732) 993-1850

   and

**DLA PIPER US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
(312) 368-4000

Attorneys for Petitioner
Coverall North America, Inc.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................... iv

INTRODUCTION .................................................................................. 1

RELEVANT BACKGROUND FACTS............................................................. 2

    The Parties ........................................................................................ 2

    The Franchise Agreement's Dispute Resolution Mechanism............................ 3

    This Lawsuit....................................................................................... 4

ARGUMENT ...................................................................................... 5

I.     ALL QUESTIONS REGARDING THE VALIDITY OF PINEDA'S
      ARBITRATION AGREEMENT MUST BE RESOLVED BY THE
      ARBITRATOR ............................................................................... 5

II.    THE ARBITRATION AGREEMENT ENCOMPASSES ALL OF PINEDA'S
      CLAIMS, EVEN HER SUPPOSED STATUTORY CLAIMS ........................ 6

      A.    *Garfinkel* Does Not Apply To This Case Because The Scope Of The
          Parties' Arbitration Agreement Is Governed Not By State Law, But By
          The FAA ............................................................................... 7

      B.    If *Garfinkel* Were Applicable Here, The Principle It Stands For Must Fall,
          As That Principle Violates, And Is Therefore Preempted By, The FAA ........... 11

          1.    *Garfinkel* Only Applies To Arbitration Agreements .............................. 12

          2.    *Garfinkel* Impermissibly Reverses The Presumption Favoring
              Arbitrability.................................................................... 13

      C.    Even Under *Garfinkel*, The Arbitration Agreement Encompasses All Of
          Pineda's Claims .................................................................... 14

III.   BECAUSE THE "VINDICATION OF STATUTORY RIGHTS" EXCEPTION
      APPLIES ONLY WHEN FEDERAL STATUTORY CLAIMS ARE AT ISSUE,
      PINEDA HAS NOT PRESENTED ANY VIABLE BASIS FOR
      INVALIDATING ANY PROVISION OF HER ARBITRATION AGREEMENT....... 15

IV.   EACH PROVISION OF THE ARBITRATION AGREEMENT SHOULD BE
      ENFORCED ................................................................................. 19

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

A.    The Class Action Waiver Is Fully Enforceable ................................................... 19

    1.    *Muhammad* Applies Only To Cases Where Minimal Damages Are At Stake............................................................................................. 19

    2.    *Kristian's* "Vindication of Statutory Rights" Theory Is Inapplicable and Unavailing ............................................................. 22

B.    Pineda's Assertions Concerning The Costs Of Arbitration Are Not A Valid Basis For Not Enforcing Her Agreement To Arbitrate............................ 25

    1.    A Claim Of Excessive Costs May Be Raised Only When Federal Statutory Claims Are At Issue .................................................. 25

    2.    Pineda Has Not Proved That She Is Unable To Afford Arbitration ....... 26

        a.    Pineda's Claim That She Does Not Have To Prove That She Cannot Afford Arbitration Is Contrary To *Green Tree* ........ 26

        b.    Pineda's "Evidence" Is The Very Same Evidence The Supreme Court Found Insufficient In *Green Tree* ...................... 27

    3.    If Pineda Demonstrated That She Was Actually Unable to Pay The Costs of Arbitration, Coverall Would Pay Those Costs ......................... 28

    4.    Because Pineda Can Avail Herself Of The AAA's Hardship Procedures, She Should Not Be Permitted To Complain About Costs................................................................................................ 29

C.    The Attorneys' Fees Provision Does Not Prevent Arbitration Of This Dispute .......................................................................................................... 30

    1.    New Jersey Enforces Contractual Fee Provisions .................................. 30

    2.    Because The Fee Provision Applies In Both Litigation And Arbitration, It Is Not A Valid Basis For Challenging The Enforceability Of The Arbitration Agreement......................................... 32

    3.    The Mere Risk That Pineda "Might" Have To Pay Attorneys' Fees Is Too Speculative To Warrant Invalidating The Arbitration Agreement........................................................................................... 33

## TABLE OF CONTENTS

**Page**

D.    The Remedy Limitation And The Punitive Damages Waiver Do Not Make Pineda's Arbitration Agreement Unenforceable.................................................. 34

E.    The Contractual Limitations Period Is Enforceable............................................ 35

F.    The Confidentiality And No-Collateral-Estoppel Provisions Are Enforceable .......................................................................................................... 36

IV.    IF THIS COURT FINDS ANY PROVISION IN THE ARBITRATION AGREEMENT UNENFORCEABLE, THAT PROVISION SHOULD BE SEVERED AND THE OBLIGATION TO ARBITRATE PRESERVED...................... 38

CONCLUSION.................................................................................................................... 39

# TABLE OF AUTHORITIES

## CASES

*Alfano v. BDO Seidman, LLP*,
393 N.J. Super. 560 (App. Div. 2007) ............................................................15

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)...........................................................................................12

*American Heritage Life Ins. Co. v. Orr*,
294 F.3d 702 (5th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003)..............27, 30

*Anders v. FPA Corp.*,
164 F.R.D. 383 (D.N.J. 1995)...........................................................................30

*Apollo Computer, Inc. v. Berg*,
886 F.2d 469 (1st Cir. 1989)................................................................................6

*AT&T Corp. v. Ting*,
319 F.3d 1126 (9th Cir.), *cert. denied*, 540 U.S. 811 (2003).............................36

*AT&T Techs. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)........................................................................................9, 13

*Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*,
585 F.2d 39 (3d Cir. 1978)...............................................................................8, 9

*Blair v. Scott Specialty Glass*,
283 F.3d 595 (3d Cir. 2002)....................................................................24, 27, 28

*Bloom v. Jersey City Mun. Util. Auth.*,
2008 WL 360986 (D.N.J. Feb. 8, 2008) ..........................................................14

*Boyd v. Town of Hayneville*,
144 F. Supp. 2d 1272 (M.D. Ala. 2001) ..........................................................30

*Bradford v. Rockwell Semiconductor Sys., Inc.*,
238 F.3d 549 (4th Cir. 2001) .................................................................25, 27, 32

*Brown v. Wheat First Secs., Inc.*,
257 F.3d 821 (D.C. Cir.), *cert. denied*, 534 U.S. 1067 (2001) .........................18

*Burden v. Check into Cash, LLC*,
267 F.3d 483 (6th Cir. 2001), *cert. denied*, 535 U.S. 970 (2002).....................27

*Caley v. Gulfstream Aerospace*,
428 F.3d 1359 (11th Cir. 2005), *cert. denied*, 547 U.S. 1128 (2006)................36

*Circuit City Stores v. Adams*,
  532 U.S. 105 (2001).................................................................................10

*Cole v. Burns Int'l Sec. Servs.*,
  105 F.3d 1465 (D.C. Cir. 1997) ...................................................17, 18

*Contec Corp. v. Remote Solution Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005)...................................................................6

*Cooper v. MRM Investment Co.*,
  367 F.3d 493 (6th Cir. 2004) ...............................................................32

*Cost Bros., Inc. v. Travelers Indem. Co.*,
  760 F.2d 58 (3d Cir. 1985).....................................................................13

*Dabney v. Option One Mortgage Corp.*,
  2001 WL 410543 (E.D. Pa. Apr. 19, 2001) .........................................29

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)...............................................................................15

*Delta Funding Corp. v. Harris*,
  189 N.J. 28 (2006) ............................................18, 19, 20, 21, 22, 31

*Dillon v. Typaldos*,
  2006 WL 1381625 (N.J. Super. Ct. Ch. Div. May 19, 2006) .............6

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996)..............................................................12, 13, 16, 31

*Dunkley v. Mellon Investor Servs./Volt Mgmt., Inc.*,
  2007 WL 3025730 (D.N.J. Oct. 15, 2007)..........................................14

*Faber v. Menard, Inc.*,
  367 F.3d 1048 (8th Cir. 2004) ...............................................26, 27, 28

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)..................................................................................5

*Fiser v. Dell Computer Corp.*,
  2007 WL 2197515 (N. Mex. Ct. App. Apr. 30 2007).......................24

*Gannon v. Circuit City Stores, Inc.*,
  262 F.3d 677 (8th  Cir. 2001) ..............................................................38

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*,
  168 N.J. 124 (2001) ..............................................6, 7, 9, 11, 12, 13, 14

*Gay v. Creditinform*,
    511 F.3d 369 (3d Cir. 2007)..........................................................................18, 19, 25

*Goodman v. ESPE America, Inc.*,
    2001 WL 64749 (E.D. Pa. Jan. 19, 2001) ..........................................................33

*Great W. Mortgage Corp. v. Peacock*,
    110 F.3d 222 (3d Cir.), *cert. denied*, 522 U.S. 915 (1997).........................34, 35

*Green Tree Fin. Corp.-Alabama v. Randolph.*,
    531 U.S. 79 (2000).........................................16, 17, 24, 25, 26, 27, 28, 32, 33

*Heher v. Smith, Stratton, Wise, Heher and Brennan*,
    170 N.J. 213 (2001) ...........................................................................................36

*Hines v. Davidowitz*,
    312 U.S. 52 (1941)..............................................................................................11

*Homa v. Am. Express Co.*,
    496 F. Supp. 2d 440 (D.N.J. 2007) ...................................................................19

*Iberia Credit Bureau v. Cingular Wireless*,
    379 F.3d 159 (5th Cir. 2004) .......................................................................36, 37

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    133 F.3d 225 (3d Cir.), *cert. denied*, 525 U.S. 817 (1998)..............................13

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ...........................................................................25

*Int'l Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co., Inc.*,
    384 N.J. Super. 275 (App. Div. 2006), *rev'd on other grounds*, 192 N.J. 372
    (2007)...................................................................................................................34

*James v. McDonald's Corp.*,
    417 F.3d 672 (7th Cir. 2005) .............................................................................32

*Johnson v. W. Suburban Bank*,
    225 F.3d 366 (3d Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001)...............19, 22

*Jones v. The Chubb Institute*,
    2007 WL 2892683 (D.N.J. Sept. 28, 2007) .................................................20, 21

*KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*,
    184 F.3d 42 (1st Cir. 1999)..................................................................................8

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir.  2006)..................................................15, 22, 23, 24, 31, 38

*Livingston v. Assocs. Fin., Inc.*,
    339 F.3d 553 (7th Cir. 2003) ..................................................................27

*Lloyd v. Hovensa*,
    369 F.3d 263 (3d Cir. 2004)..................................................................36

*Lloyd v. MBNA Am. Bank, N.A.*,
    27 Fed. Appx. 82 (3d Cir. Jan. 7, 2002)................................................19

*Martindale v. Sandvik, Inc.*,
    173 N.J. 76 (2002) ................................................................................14

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)......................................................................4, 8, 13

*Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*,
    247 F.3d 44 (3d Cir. 2001).......................................................................8

*Mirra v. Holland Am. Line*,
    331 N.J. Super. 86 (App. Div. 2000) .....................................................35

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)........................................................1, 8, 9, 10, 13

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).......................................................................8, 9, 16

*Muhammad v. County Bank of Rehoboth Beach*,
    189 N.J. 1 (2006), *cert. denied*, 127 S. Ct. 2032 (2007)......................17, 19, 20, 21, 22, 39

*Musnick v. King Motor Co.*,
    325 F.3d 1255 (11th Cir. 2003) ..................................................25, 27, 33

*Nelson v. Insignia/ESQ, Inc.*,
    215 F. Supp. 2d 143 (D.D.C. 2002) .......................................................18

*Ornelas v. Sonic-Denver T, Inc.*,
    2007 WL 274738 (D. Colo. Jan. 29, 2007).............................................24

*O'Shea v. Direct Fin. Solutions, LLC*,
    2007 WL 4373038 (E.D. Pa. Dec. 5, 2007)............................................21

*Paladino v. Avnet Computer Techs., Inc.*,
    134 F.3d 1054 (11th Cir. 1998) ..............................................................25

*Parilla v. IAP Worldwide Servs. VI, Inc.*,
    368 F.3d  269 (3d Cir. 2004)..................................................................36

*Perry v. Thomas*,
    482 U.S. 483 (1987)................................................................................12, 16

*Prima Paint Corp. v. Conklin*,
    388 U.S. 395 (1967)........................................................................................11

*Pro Tech Indus., Inc. v. URS Corp.*,
    377 F.3d 868 (8th Cir. 2004) ........................................................................17

*Qualcomm Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006)......................................................................6

*Rajjak v. McFrank and Williams*,
    2001 WL 799766 (S.D.N.Y. July 13, 2001) ................................................33

*Riddlestorffer v. City of Rahway*,
    82 N.J. Super. 423 (Law Div. 1964)..............................................................38

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    170 F.3d 1 (1st Cir. 1999)..............................................................................25

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974)......................................................................................31

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)........................................................................................9

*Sherwood Jewelers-Newark, Inc. v. Philadelphia Nat'l Ins. Co.*,
    102 F. Supp. 103 (D.N.J. 1952) ....................................................................35

*Snowden v. CheckPoint Check Cashing*, 290 F.3d 631 (4th Cir.), *cert. denied*, 537 U.S.
    1087 (2002).....................................................................................................14

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984).................................................................................12, 13, 14

*Spinetti v. Service Corp. Int'l*,
    324 F.3d 212 (3d Cir. 2003)................................................................ 28, 29, 39

*Stutler v. T.K. Constructors, Inc.*,
    448 F.3d 343 (6th Cir. 2006) ...................................................................16, 17

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*,
    432 F.3d 1327 (11th Cir. 2005) ..................................................................6, 39

*Tracinda Corp. v. DaimlerChrysler AG*,
    502 F.3d 212 (3d Cir. 2007)...........................................................................14

*Utica Mutual Ins. Co. v. DiDonato*,
    187 N.J. Super. 30 (App. Div. 1982) ................................................................34

*Vandenberg v. Superior Court*,
    21 Cal. 4th 815 (Cal. 1999)................................................................................38

*Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*,
    489 U.S. 468 (1989)..............................................................................8, 11, 12, 13


### <u>STATUTES and RULES</u>


9 U.S.C. §2 ....................................................................................................................8, 12

Rule 7(a) of the AAA's Commercial Arbitration Rules ..................................................5

Rule 49 of the AAA's Commercial Arbitration Rules....................................................29

American Arbitration Association, Administrative Fee Waivers
    and Pro Bono Arbitrators Services (updated January 1, 2003)...........................29

Petitioner Coverall North America, Inc. ("Coverall"), by its attorneys, respectfully submits this response to Respondent Denisse Pineda's ("Pineda") Opposition (the "Opposition") to Coverall's Petition to Compel Arbitration pursuant to §4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*.

## <u>INTRODUCTION</u>

Pineda's Opposition to Coverall's Petition to Compel Arbitration not only ignores the teachings of the Third Circuit and the impact of the FAA on this proceeding, but contravenes the holdings of at least two opinions of the United States Supreme Court. Pineda first contends that her arbitration agreement is completely unenforceable, and that this Court should therefore deny Coverall's Petition, because the arbitration agreement does not specifically reference "statutory" claims, as supposedly required by New Jersey law. Even if New Jersey law actually required arbitration agreements to mention "statutes" to bring statutory claims within their reach – and it does not – the arbitration agreement at issue in this case is encompassed by the FAA. When an arbitration agreement falls with the scope of the FAA, courts are to determine whether parties have agreed to arbitrate a particular dispute by applying federal law, not state law. And in stark contrast to New Jersey law – which construes ambiguities in arbitration clauses *against* arbitration with respect to certain statutory claims – the federal law of arbitrability establishes that any ambiguities concerning the scope of an arbitration clause must be resolved *in favor of* arbitration. The fact that statutory claims are at issue has absolutely no bearing on this fundamental principle. Indeed, in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, the United States Supreme Court rejected as without basis the very proposition that Pineda asks this Court to accept – namely, that an arbitration agreement must reference "statutes" to bring statutory claims within its reach.

Pineda's other arguments – which challenge the enforceability of several provisions of the arbitration agreement – are equally unavailing.  They are also irrelevant to Coverall's Petition.  Pineda and Coverall agreed, when they entered into their arbitration agreement, that all arbitration proceedings would be governed by the Commercial Rules of the American Arbitration Association.  Because those Rules make clear that *the arbitrator* is to determine all challenges regarding the validity of the arbitration agreement, any challenges Pineda seeks to raise regarding her arbitration agreement must be submitted to the arbitrator, not this Court.  But even if this Court were to address Pineda's various arguments, each must fail, as the law in this Circuit (which Pineda generally ignores in favor of Ninth Circuit cases) supports the enforcement of every provision in the parties' arbitration agreement.  For these and the reasons that follow, an Order should be entered compelling Pineda to submit her claims to arbitration in accordance with the terms of the parties' arbitration agreement.

## RELEVANT BACKGROUND FACTS

### The Parties

Coverall is engaged in the business of granting franchises to qualified persons to operate commercial janitorial cleaning businesses.  (Franchise Agreement at p.1, ¶C; a copy of the Franchise Agreement is annexed to Coverall's Petition to Compel Arbitration [Dckt. No. 1] as Exhibit "A".)  In addition to a license to use Coverall's trade names and marks, and the Coverall operating system, Coverall franchisees are provided with, among other things, training, equipment, billing and collection services, and a quality control program.  (*Id*. at p.1, ¶B.)

Coverall also offers its franchisees customer accounts to clean.[1]  Under the Coverall System, Coverall enters into contracts with customers for cleaning services, and delegates the performance of the services under the contracts to its franchisees.  (*Id*. at p.1, ¶D.)  Consistently recognized as one of the top franchise systems, Coverall has over 8,000 franchise owners in the United States.

Pineda is a former franchisee of Coverall.  On April 28, 2006, Pineda entered into a written Janitorial Franchise Agreement with Coverall d/b/a Coverall of Northern New Jersey by which Coverall granted Pineda a franchise to operate a commercial janitorial business in New Jersey.  Pineda did not make her decision to acquire a Coverall franchise in haste.  On February 16, 2006, over two months before she signed the Franchise Agreement, Pineda received from Coverall a copy of its offering circular, as required by the Federal Trade Commission's Franchise Rule, 16 C.F.R. §436.  (A copy of Pineda's receipt of this offering circular is annexed to the Declaration of Steven Gooby ["Gooby Decl."] as Exhibit A.)  Consistent with the FTC's Franchise Rule, that offering circular included a complete copy of the Franchise Agreement that Pineda later signed.  (*See* Gooby Decl. Exhibit B.)

## The Franchise Agreement's Dispute Resolution Mechanism

The Franchise Agreement sets forth a detailed mechanism for resolving any disputes that arise between Coverall and its franchisees.  First, Coverall and the franchisee are required to submit their disputes to non-binding mediation in the State in which the franchisee conducts its business (a step ignored by Pineda).  (Franchise Agreement ¶20.)  If mediation is unsuccessful,

---

[1]     The purpose of offering these accounts (which are referred to as "Initial Business" in the Franchise Agreement) is to offer the franchisee a turn-key operation.  Of course, each Coverall franchisee is free to solicit new customer accounts using the techniques and procedures that Coverall offers its franchisees.  (Franchise Agreement ¶5(D).)

the parties are required to submit their disputes to binding arbitration (which, like mediation, is to take place in the State in which the Franchisee does business).  Specifically, Paragraph 21 of the Franchise Agreement mandates that:

> all controversies, disputes or claims between Coverall, its officers, directors, agents and/or employees (in their respective capacities) and Franchisee (and Franchisee's owners, officers, directors and/or any guarantors of this Agreement) arising out of or related to the relationship of the parties, this Agreement or the validity of this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure of Coverall, including those set forth in the Coverall Policy and Procedure Manual … shall be submitted promptly for arbitration.

> Arbitration shall be subject to the Federal Arbitration Act and not any state arbitration law and, except as otherwise provided in this Agreement or agreed upon by the parties in writing, the then current Rules of the American Arbitration Association for Commercial Arbitration.

(Franchise Agreement ¶21.)

### **This Lawsuit**

On February 15, 2007, Pius Awuah (a Massachusetts resident) filed a putative class action against Coverall in the United States District Court for the District of Massachusetts. (Case No. 07-10287.)  An Amended Complaint, which named Pineda as an additional plaintiff, was filed on February 21, 2007, and a Second Amended Complaint ("Complaint") was filed on June 5, 2007.  While it sets forth a litany of claims, the Complaint is premised primarily on the following allegations: (i) that Coverall breached its Franchise Agreements with Pineda and the other plaintiffs; (ii) that Coverall defrauded plaintiffs in connection with the execution of their Franchise Agreements (Complaint ¶¶13-14, 32); and (iii) that Coverall "misclassified" plaintiffs as independent contractors.  (Complaint ¶41.)

In an effort to enforce Pineda's arbitration agreement, Coverall filed this action to compel arbitration of Pineda's disputes.  At the same time, Coverall filed a motion in the Massachusetts

District Court which asked that Court to stay all proceedings as to Pineda until this Court rules on the Petition to Compel Arbitration.[2]

## ARGUMENT

### I.   ALL QUESTIONS REGARDING THE VALIDITY OF PINEDA'S ARBITRATION AGREEMENT MUST BE RESOLVED BY THE ARBITRATOR

While Pineda's attacks on her arbitration agreement are deficient for a variety of reasons, this Court should not address those claims because the parties agreed that all questions regarding the validity of that agreement would be resolved by the arbitrator.  The question of who (the arbitrator or the court) decides the validity of an agreement to arbitrate "turns upon what the parties agreed about that matter."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).  Although a court ordinarily addresses challenges to the validity of an arbitration agreement, such challenges must be referred to the arbitrator if there is "clear and unmistakable evidence" that the parties intended the issue of arbitrability to be decided by the arbitrator.  *Id*.

Here, there is such evidence.  In their arbitration agreement, Coverall and Pineda agreed that arbitration would be conducted in accordance with "the then current Rules of the American Arbitration Association ["AAA"] for Commercial Arbitration."   Rule 7(a) of the AAA's Commercial Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the **existence, scope or validity of the arbitration agreement**."   (*See* Gooby Decl. Exhibit C; emphasis added.)  As the New Jersey state courts and every federal circuit court to address the issue have made clear, when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability,

---

[2]      Pineda contends that the enforceability of her arbitration agreement is before the Massachusetts court.  But as Coverall pointed out in the reply memorandum it filed in support of its motion to strike [Dckt. No. 27], that is just not the case.

the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *accord Dillon v. Typaldos*, 2006 WL 1381625, at *12 (N.J. Super. Ct. Ch. Div. May 19, 2006) ("[W]here arbitration agreements incorporate the AAA rules, the parties have expressly agreed to allow the arbitrator to decide arbitrability."); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1329 (11th Cir. 2005) (because the AAA Rules empower the arbitrator to rule on the validity of an arbitration agreement, the plaintiff's claim that the arbitration agreement "illegally deprive[d]" it of various statutory remedies was for the arbitrator, not the court); *Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989).

Pineda's arbitration agreement expressly states that arbitration "shall be subject to … the then current Rules of the American Arbitration Association for Commercial Arbitration." Because the incorporation of those Rules constitutes clear and unmistakable evidence of the parties' intent to submit the issue of arbitrability to the arbitrator, Coverall's petition to compel arbitration should be granted.

## II.   THE ARBITRATION AGREEMENT ENCOMPASSES ALL OF PINEDA'S CLAIMS, EVEN HER SUPPOSED STATUTORY CLAIMS

Despite the extremely broad wording of the parties' arbitration agreement, Pineda asserts that her statutory claims should not be sent to arbitration because, under New Jersey law, "in order to be valid as to statutory claims, an arbitration provision must explicitly state that it applies to statutory claims." (Opposition at 6-7, citing *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124 (2001)). Pineda is wrong for at least three reasons.

A.     *Garfinkel* Does Not Apply To This Case Because The Scope Of The Parties'
       Arbitration Agreement Is Governed Not By State Law, But By The FAA

First, even if Pineda's contention constituted an accurate description of New Jersey law –

and as discussed below it does not – it has no bearing on the arbitrability of Pineda's claims

because, as the United States Supreme Court has repeatedly made clear, when an arbitration

agreement falls within the scope of the FAA, courts are to determine whether parties have agreed

to arbitrate a particular dispute by applying **federal law**, not state law.

In *Garfinkel*, the parties entered into an arbitration agreement which required them to

submit "any controversy or claim arising out of, or relating to, this Agreement or the breach

thereof," to arbitration.  *Garfinkel*, 168 N.J. at 128.  The New Jersey Supreme Court concluded

that this language was ambiguous, and suggested "that the parties intended to arbitrate only those

disputes involving a contract term, a condition of employment, or some other element of the

contract itself."  *Id*. at 146.  For this reason – and because it concluded that the availability of a

judicial forum was "an integral feature" of New Jersey's anti-discrimination statute (*id*. at 131) –

the Court held that an arbitration agreement would not be read to encompass claims under that

statute unless the agreement "clearly and unmistakably established" an intent to arbitrate those

claims.  *Id*. at 136 (citations and quotations omitted).[3]

*Garfinkel* has no bearing whatsoever on this case.  *Garfinkel* determined that, under New

Jersey law, some additional showing was required before an arbitration clause would be deemed

to encompass statutory discrimination claims.  The arbitration agreement at issue in this case,

---

[3]     The New Jersey Law Against Discrimination is not at issue here.

however, is governed by the FAA.[4]  When, as here, an arbitration agreement is governed by the

FAA, **its scope is to be assessed by reference to federal law, not state law**.

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration

agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses*

*H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Indeed, the 'primary

purpose' of the FAA is to ensure "that private agreements to arbitrate are enforced according to

their terms."  *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S.

468, 479 (1989).  Accordingly, "the first task of a court asked to compel arbitration is to

determine whether the parties agreed to arbitrate that dispute."  *Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  A "court is to make this determination by

applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement

within the coverage of the Act.'"  *Mitsubishi*, 473 U.S. at 626 (quoting *Moses H. Cone*, 460 U.S.

at 24); *accord Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d

Cir. 2001) ("federal law applies in questions regarding the construction and enforcement of an

arbitration clause, even in those cases in which the district court's jurisdiction is based on

diversity of citizenship"); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585

---

[4]     The FAA applies whenever there is an agreement to arbitrate contained in "a contract evidencing a transaction involving commerce."  9 U.S.C. §2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995).  The Franchise Agreement in this case was entered into between Pineda, a New Jersey resident, and Coverall, a Delaware corporation with its principal place of business in Florida.  Because the Franchise Agreement calls for a continuous stream of products and funds to be exchanged between these diverse parties, the agreement plainly evidences "commerce" among the several states for purposes of the FAA.  *See KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999) (franchise agreements between Massachusetts franchisee and Illinois franchisor "implicate interstate commerce, thus subjecting them to the reach of the FAA").  Furthermore, Coverall and Pineda agreed, in Section 21 of the Franchise Agreement, that "[a]rbitration shall be subject to the Federal Arbitration Act."

F.2d 39, 43 (3d Cir. 1978) (same).  State law has no role in this determination, as the Third

Circuit explained in *Becker Autoradio*:

> For example, consider the case where a contract containing an arbitration clause
> provides that the law of state X shall govern the agreement.  Assume that the law
> of state X will not enforce, or gives very limited effect to arbitration clauses, such
> that under X law the dispute would not be submitted to arbitration.  If one party
> sues on the contract in federal court, and the contract involves "commerce", the
> federal district court, in deciding a motion to stay the proceedings and compel
> arbitration under 9 U.S.C. §3, would look to federal law in determining the scope
> of the arbitration clause.

*Becker Autoradio*, 585 F.2d at 43 n. 8.

In stark contrast to *Garfinkel* – which construed an ambiguity in an arbitration clause

**against** arbitration – the federal law of arbitrability establishes that "'any doubts concerning the

scope of arbitrable issues should be resolved **in favor of** arbitration, whether the problem at hand

is the construction of the contract language itself or an allegation of waiver, delay, or a like

defense to arbitrability.'"  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 n.8

(1995) (quoting *Moses H. Cone*, 460 U.S. at 24-25) (emphasis added); *accord AT&T Techs. v.

Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  The fact that statutory claims may be at

issue has no bearing on this principle.  "There is no reason to depart from these guidelines where

a party bound by an arbitration agreement raises claims founded on statutory rights."  *Mitsubishi*,

473 U.S. at 626.  In fact, the Supreme Court made clear that the FAA "provides no basis for

disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry

into arbitrability." *Id*.; *accord Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).[5]

In *Mitsubishi*, the defendant-distributor (Soler) filed counterclaims against Mitsubishi for violation of various federal and Puerto Rican statutes.  473 U.S. at 619-20.  In opposition to Mitsubishi's motion to compel arbitration of these claims, Soler asserted that the parties' arbitration agreement could not be read to encompass its statutory counterclaims.  Soler did not premise this argument on the wording of the arbitration agreement, which encompassed "[a]ll disputes, controversies or differences which may arise between [Mitsubishi] and [Soler] out of or in relation to … this Agreement or for the breach thereof …. ."  *Id*. at 617.  Instead, advancing the very same argument as Pineda, Soler argued that "a court may not construe an arbitration agreement to encompass claims arising out of statutes designed to protect a class to which the party resisting arbitration belongs unless [that party] has expressly agreed to arbitrate those claims."  *Id*. at 624-25 (internal quotations omitted).  Because the parties' arbitration agreement did not mention the statutes at issue "or statutes in general," Soler argued that the agreement could not be read to require arbitration of statutory claims.  *Id*. at 625.

The Supreme Court rejected this argument.  After reiterating that the scope of an arbitration agreement is governed by federal law and that, under federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," the Court held that there was "no reason to depart from these guidelines where a party bound by an arbitration agreement raises claims founded on statutory rights."  *Id*. at 626.  There was, the

---

[5]     At its core, *Garfinkel* is premised on the view that the arbitral forum is a less adequate forum for the resolution of certain statutory claims in the employer/employee setting.  The United States Supreme Court, however, has been "clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context."  *Circuit City Stores v. Adams*, 532 U.S. 105, 123 (2001).

Court held, "**no basis**" for reversing the presumption and "disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Id*. at 627 (emphasis added).

Pineda never contends (nor could she) that the plain terms of the arbitration agreement do not encompass the disputes she has raised. The arbitration clause is drafted in the broadest of terms, requiring the submission to arbitration of "all controversies, disputes or claims between Coverall …. and Franchisee [Pineda] …. arising out of or related to the relationship of the parties, this Agreement or the validity of this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure of Coverall … ." Each of Pineda's claims – which seek damages for Coverall's alleged fraudulent conduct and supposed breaches of contract, damages based on Coverall's "misclassification" of Pineda, and rescission of the Franchise Agreement – plainly arises out of and relates to the Franchise Agreement and the relationship between the parties. *See Prima Paint Corp. v. Conklin*, 388 U.S. 395, 406 (1967) (language requiring arbitration of "[a]ny controversy or claim arising out of or relating to th[e] Agreement, or the breach thereof" was "easily broad enough to encompass" plaintiff's claim for fraudulent inducement and rescission). Accordingly, those claims, including the statutory ones, are encompassed by the arbitration agreement.

**B.    If *Garfinkel* Were Applicable Here, The Principle It Stands For Must Fall, As That Principle Violates, And Is Therefore Preempted By, The FAA**

Second, even if *Garfinkel* were applicable, the test it devised for determining whether statutory claims are encompassed by an arbitration agreement is preempted by the FAA. "The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt*, 489 U.S. at 477. "But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the

extent that it actually conflicts with federal law - that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).  *Garfinkel* presents just such an obstacle.

### 1.    *Garfinkel Only Applies To Arbitration Agreements*

At first, to the extent New Jersey law is interpreted to require an arbitration agreement to mention the word "statute" or provide any special notice before it is deemed to encompass statutory claims, it runs afoul of the plain terms of §2 of the FAA, which provides the sole grounds upon which a state may seek to limit the enforceability of arbitration agreements. *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984); *Allied-Bruce*, 513 U.S. at 281; *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).  Section 2 of the FAA provides that "a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Volt*, 489 U.S. at 474 (quoting 9 U.S.C. §2).  "Thus state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability and enforceability of contracts generally." *Perry*, 482 U.S. at 492 n.9.  "A state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of §2." *Id*; *accord Southland*, 465 U.S. at 16-17.

The Supreme Court's opinion in *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996) best illustrates this principle.  In *Casarotto*, the Supreme Court reviewed a decision of the Montana Supreme Court which invalidated an arbitration agreement because it was not "typed in underlined capital letters on the first page of the contract," as required by a Montana statute.  *Id*. at 684.  Rejecting the argument that these requirements were needed to make sure that arbitration agreements were entered into knowingly, the Supreme Court held that the Montana statute

violated §2 of the FAA.  Because the Montana law "condition[ed] the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally," that law was impermissible under the FAA.  *Id*. at 687.

The standard set forth in *Garfinkel* suffers from the same fatal flaws as the Montana statute.  On its face, *Garfinkel's* standard "takes its meaning precisely from the fact that a contract to arbitrate is at issue" (*Southland*, 482 U.S. at 492 n.9) and applies "*only* to arbitration agreements." *Casarotto*, 517 U.S. at 687 (emphasis in original).  Indeed, in no other context has the New Jersey Supreme Court required a party to include the word "statute" in contractual provisions to draw statutory claims within the scope of such provisions.  For these reasons, *Garfinkel* does not apply to  "any" contract, as required by §2 of the FAA.  It is, as such, preempted by §2.

### 2.    *Garfinkel Impermissibly Reverses The Presumption Favoring Arbitrability*

*Garfinkel* also conflicts with the standards by which the scope of arbitration agreements are to be determined.  As noted above, when a court interprets provisions in an agreement "covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved **in favor of arbitration**." *Mastrobuono*, 514 U.S. at 62 (quoting *Volt*, 489 U.S. at 476).  In fact, "[a]ny inquiry into the scope of an arbitration clause must necessarily begin with the presumption that arbitration applies." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 231 (3d Cir.), *cert. denied*, 525 U.S. 817 (1998); *accord AT&T*, 475 U.S. at 649.  By holding that statutory employment claims will not be arbitrable unless there is "clear and unmistakable" evidence that the parties intended to arbitrate such claims, *Garfinkel* impermissibly reverses this presumption. *Mitsubishi*, 473 U.S. at 627.  *Garfinkel*, as such, "undercut[s] the enforceability of arbitration

13

agreements'" covered by the FAA. *Southland*, 465 U.S. at 16. It is therefore preempted. *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 80 (3d Cir. 1985) (the FAA "preempts state law that might 'undercut the enforceability of arbitration agreements'") (quoting *Southland*, 465 U.S. at 16).

C.      **Even Under *Garfinkel*, The Arbitration Agreement Encompasses All Of Pineda's Claims**

Assuming *arguendo* that New Jersey law governed the scope of the arbitration agreement, Pineda would still be required to arbitrate her statutory claims. In *Martindale v. Sandvik, Inc.*, 173 N.J. 76 (2002) – which was issued one year after *Garfinkel* – the New Jersey Supreme Court again addressed whether certain statutory employment claims were encompassed by an arbitration clause. While the arbitration provision at issue in *Martindale* did not refer to statutory claims, it did state that that the employee would submit "all claims relating [his] employment with Sandvik or termination thereof" to arbitration. *Id.* at 81-2. Distinguishing this provision from the one at issue in *Garfinkel*, the *Martindale* court held that this agreement did "not contain any limiting references" and "provided plaintiff with sufficient notice at the time she signed the agreement that all claims relating to employment with and termination from Sandvik would be resolved through arbitration." *Id*. at 96. For this reason, the court held that the arbitration agreement "was sufficiently broad to encompass reasonably plaintiff's statutory causes of action." *Id.*[6]; *see also Dunkley v. Mellon Investor Servs./Volt Mgmt., Inc.*, 2007 WL 3025730, *3 (D.N.J. Oct. 15, 2007) (granting motion to compel arbitration of state and federal

---

[6]      While the court noted that the broad arbitration agreement was "augmented" by a jury waiver, the Third Circuit has deemed such waivers irrelevant. In *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212 (3d Cir. 2007), the court recognized that the "'loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.'" *Id*. at 223 (quoting *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir.), *cert. denied*, 537 U.S. 1087 (2002)).

discrimination claims where arbitration agreement did not contain any reference to statutory claims); *Bloom v. Jersey City Mun. Util. Auth.*, 2008 WL 360986 (D.N.J. Feb. 8, 2008) (Martini, J.) (granting motion to stay litigation of wage, §1983, New Jersey Civil Rights and New Jersey antidiscrimination claims where arbitration agreement referenced only "employment related claims"); *Alfano v. BDO Seidman, LLP*, 393 N.J. Super. 560, 577 (App. Div. 2007) (granting motion to compel arbitration of New Jersey RICO and consumer fraud act claims where arbitration agreement made no reference to statutory claims).

Pineda's arbitration agreement refers to "**all** controversies, disputes or claims between Coverall … and Franchisee … arising out of or related to the relationship of the parties, this Agreement or validity of this Agreement, [or] any related agreement" between the parties.  That is more than broad enough to encompass Pineda's statutory claims.[7]

## III.   BECAUSE THE "VINDICATION OF STATUTORY RIGHTS" EXCEPTION APPLIES ONLY WHEN FEDERAL STATUTORY CLAIMS ARE AT ISSUE, PINEDA HAS NOT PRESENTED ANY VIABLE BASIS FOR INVALIDATING ANY PROVISION OF HER ARBITRATION AGREEMENT

In addition to arguing that her statutory claims are not arbitrable, Pineda raises a variety of challenges to various provisions of the arbitration agreement.  Pineda's challenges, however, are not premised on any generally applicable contract defense, as required by §2 of the FAA. Instead, Pineda contends (bereft of any authority from this Circuit) that this Court can invalidate various provisions of her arbitration agreement if she is able to demonstrate that these provisions

---

[7]     Claiming that it would result in "unnecessary bifurcation," Pineda asserts that because she should not have to arbitrate her statutory claims, she should not have to arbitrate her common law claims, even though those claims are encompassed by the arbitration agreement.  The United States Supreme Court has rejected that very proposition.  In *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985), the Court held that district courts must "compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."

affect her ability to "vindicate her statutory rights."  This argument – which is premised entirely on her reading of the First Circuit's opinion in *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006) – is unfounded, for as the Sixth, Eighth, and D.C. Circuits have made clear, and as the New Jersey Supreme Court recently recognized, the "vindication of statutory rights" exception to an otherwise valid arbitration agreement applies **only** when federal statutory claims are at issue (and none are at issue here).

In *Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343 (6th Cir. 2006), the defendant appealed the district court's denial of its motion to stay proceedings pending arbitration.  The district court denied the motion because it determined that the costs of arbitration would effectively bar the plaintiffs from pursuing their state-law claims.  In doing so, the court relied on what it perceived to be an exception to the general principle favoring the enforcement of arbitration agreements; namely, the "vindication of statutory rights" exception announced in *Green Tree Fin. Corp.- Alabama v. Randolph*., 531 U.S. 79 (2000).  Reversing the district court, the Sixth Circuit held that the district court erred when it applied the *Green Tree* "exception" to the plaintiffs' state law claims.  The *Stutler* Court held that applying that exception to state law claims would violate §2 of the FAA because the exception did not apply to all contracts.

*Stutler's* conclusion finds ample support in both the Supreme Court cases that formulated the "vindication of statutory rights" exception and in §2 itself.  While federal law is the source of the "liberal federal policy favoring arbitration agreements" (*Moses H. Cone*, 460 U.S. at 24), the validity of agreements to arbitrate is, as a general rule, governed by state law.  *Perry*, 482 U.S. at 492 n.9.  However, "[s]tate law, whether of legislative or judicial origin," is only applicable "**if** that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."  *Casarotto*, 517 U.S. at 685 (emphasis in original).  In other words, only

"generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening §2 [of the FAA]."  *Id.* at 687.

The "vindication of statutory rights" exception is **not** a state-law principle that applies to all contracts.  Rather, it was formulated by the United States Supreme Court in an attempt to "reconcile the liberal [federal] policy favoring arbitration agreements with the important rights created and protected by federal civil rights legislation."  *Stutler*, 448 F.3d at 346; *see also Green Tree*, 531 U.S. at 90 (expressing concern about arbitration costs precluding a party "from effectively vindicating her **federal statutory rights** in the arbitral forum") (emphasis added).  For this reason, the vindication of statutory rights exception is "clearly limited" to instances "where **federal statutorily provided rights are affected**."  *Stutler*, 448 F.3d at 346 (emphasis added).  Where no such rights are at issue, a party seeking to challenge the enforceability of its agreement to arbitrate can look **only** to general state law defenses.  *Id.*; *accord Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 873 (8th Cir. 2004).

Both the New Jersey Supreme Court and the D.C. Circuit – which issued another opinion on which Pineda relies (*Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997)) – have recognized this fact and the limits of the federal vindication of statutory rights exception.  In *Muhammad v. County Bank of Rehoboth Beach*, 189 N.J. 1 (2006), *cert. denied*, 127 S. Ct. 2032 (2007), the New Jersey Supreme Court discussed the difference between a vindication of statutory rights analysis and an unconscionability analysis.  Noting that the former was created to "reconcile[] various remedial federal statutes with the FAA," *Muhammad* held that the vindication of statutory rights test "is a uniquely federal question, distinct from an analysis of state contract law under *Rudbart*."  *Id.* at 102.  Similarly, in *Cole*, the D.C. Circuit created a rule that precluded employers from requiring employees to pay all or part of an arbitrator's fees for

arbitrating federal statutory claims, regardless of the employee's actual ability to pay.  *Cole*, 105 F.3d at 1483.  But *Cole* is premised on that Court's conclusion that requiring employees to pay for an arbitrator "would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum … ."  *Id.* at 1484.  For that reason, the D.C. Circuit and District Court have since made clear that *Cole* **does not apply** where federal statutory claims are not at issue.  *See Brown v. Wheat First Secs., Inc.*, 257 F.3d 821, 824-25 (D.C. Cir.) (*Cole* does not apply to "non-statutory claims"; "[i]t would be quite a contortion of *Cole* to find that it had addressed a far broader subject than the case that it set out simply to refine"), *cert. denied*, 534 U.S. 1067 (2001); *Nelson v. Insignia/ESQ, Inc.*, 215 F. Supp. 2d 143, 156-57 (D.D.C. 2002) ("*Cole* was only intended to apply to Congressionally enacted statutory rights" and does not apply to common-law claims or claims based on state statutes).

There are no federal statutory claims at issue in this case.  Therefore, to the extent she seeks to invalidate her agreement to arbitrate, Pineda must look to state law.  However, Pineda has failed to prove any generally applicable contract defense that would justify her attempt to evade her arbitration agreement.  Indeed, Pineda never contends that the arbitration agreement is procedurally unconscionable – this is not surprising, as Pineda received a copy of her Franchise Agreement over two months before she signed it – and her efforts to prove substantive unconscionability rest entirely on her assertion that some "public interest" precludes the enforcement of all class-action bars in arbitration agreements – an argument that both the Third Circuit and the New Jersey Supreme Court have explicitly rejected.  *See Gay v. Creditinform*, 511 F.3d 369, 392 (3d Cir. 2007) (right to proceed as member of class is merely procedural and may be waived); *Delta Funding Corp. v. Harris*, 189 N.J. 28, 47 (2006).  In short, because

Pineda has not established a generally applicable contract defense, her challenges must fail. Coverall's petition to compel arbitration should be granted for this reason as well.

## IV.   EACH PROVISION OF THE ARBITRATION AGREEMENT SHOULD BE ENFORCED

### A.   The Class Action Waiver Is Fully Enforceable

#### 1.   *Muhammad Applies Only To Cases Where Minimal Damages Are At Stake*

Consistent with the majority of federal circuits, the Third Circuit and this Court have repeatedly recognized that the right to proceed as a class "may be waived by agreeing to an arbitration clause." *Johnson v. W. Suburban Bank*, 225 F.3d 366, 369 (3d Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001); *accord Gay v. Creditinform,* 511 F.3d 369 (3d Cir. 2007); *Lloyd v. MBNA Am. Bank, N.A.*, 27 Fed. Appx. 82, 84 (3d Cir. Jan. 7, 2002). While she never addresses or attempts to distinguish any of these cases, Pineda claims that this Court should strike the class-action waiver in her arbitration agreement because that waiver supposedly operates "as an exculpatory clause allowing the defendant to avoid large-scale liability" for its supposed violations. (Opposition at 13.) Pineda's argument – which is premised on *Muhammad v. County Bank of Rehoboth Beach*, 189 N.J. 1 (2006)) – ignores not only the teachings of the Third Circuit, but every case which has discussed the extremely limited scope of *Muhammad*, including *Delta Funding Corp. v. Harris*, 189 N.J. 28 (2006), the "companion decision" which the New Jersey Supreme Court handed down the same day it issued *Muhammad*.

While *Muhammad* determined that the class-action waiver before it was unconscionable, it never precluded the enforcement of such waivers generally. In fact, *Muhammad* made clear that "class-action waivers in general, are not, in the strictest sense of the term, exculpatory clauses." *Muhammad*, 189 N.J. at 19; *accord Homa v. Am. Express Co.*, 496 F. Supp. 2d 440, 448 (D.N.J. 2007) ("*Muhammad* confirms that class-arbitration waivers are not 'per se

unenforceable' under the public policy of New Jersey."). The "difficulty" with Muhammad's class-action waiver, the Court held, "lies in the fact that her individual consumer-fraud case involves a small amount of damages, rendering individual enforcement of her rights, and the rights of her fellow consumers, difficult if not impossible." *Muhammad*, 189 N.J. at 19-20. Indeed, Muhammad's compensatory damages totaled merely $180, an amount which the Court noted would "add up to a maximum of less than $600," even with the possibility of treble damages under the CFA. *Id*. at 21. While the availability of attorneys' fees under the CFA favored enforcement of the waiver, the Court concluded that this factor was "not dispositive" because it was "unlikely that counsel would be willing to take" a case for such a small amount, regardless of the possible fee recovery. *Id*. The Court did note, however, that "[a]t some point, an amount of damages will be high enough to attract counsel if attorney's fees are available, even though no counsel would take the case if no attorneys' fees were available." *Id*. at 21 n.5.

Although *Muhammad* never addressed where that "point" was, significant guidance can be gleaned from *Delta Funding* and subsequent decisions from this Court. In *Delta Funding*, the New Jersey Supreme Court again addressed the enforceability of a class-action waiver in an arbitration agreement. This waiver was upheld. Noting that the plaintiff was seeking more than $100,000 in damages, the Court held that the plaintiff's claim was "not the type of low-value suit that would not be litigated absent the availability of a class proceeding." *Delta Funding*, 189 N.J. at 47. The Court also noted that "all of the statutes under which [the plaintiff] seeks relief provide for attorney's fees and costs to prevailing plaintiffs." *Id*. According to the Court, "[t]hese remedies, in combination with the substantial damages that [the plaintiff] seeks, render the class-arbitration waiver enforceable in the context of this litigation." *Id*.

This Court recently addressed the same issue.  In *Jones v. The Chubb Institute*, 2007 WL 2892683 (D.N.J. Sept. 28, 2007), three former Chubb students claimed that the class action waivers in their arbitration agreements were void as against public policy.  *Id.*, 2007 WL 2892683, at *3.  This Court rejected that argument.  After pointing out that the three plaintiffs had claims of $17,388, $17,000, and $6,551.26, respectively, that trebling was available, and that the CFA allowed for the recovery of attorneys' fees, the Court held that given the nature of their claims, the plaintiffs, "even acting individually, [could] attract competent counsel to vindicate their statutory rights."  *Id.*, 2007 WL 2892683, at *4.  The class action waivers were, as such, enforceable.  *Id.*; *accord O'Shea v. Direct Fin. Solutions, LLC*, 2007 WL 4373038, at *5 (E.D. Pa. Dec. 5, 2007) (enforcing class-action waiver where plaintiff was seeking $300 in damages).[8]

The facts of this case make clear that Pineda will have no difficulty pursuing her claims on an individual basis.  First, this is not a case where the plaintiff is seeking only a few hundred dollars.  While Pineda has carefully avoided disclosing the damages she is seeking, her counsel asserted in a jurisdictional memorandum filed with the Massachusetts District Court that each member of Pineda's putative class has suffered, on average, $45,111 in compensatory damages – *before* trebling, attorneys' fees and costs.  (*See* Gooby Decl. Exhibit D.)[9]  This, therefore, is "not

---

[8]     While Coverall has not conducted a country-wide search of the cases enforcing class-action waivers, it bears mentioning that neither *Delta Funding* nor *Chubb* was included in what Pineda asserts is the list of all cases addressing the enforceability of arbitral class-action waivers since 2006.  (*See* Opposition at 10-11.)

[9]     *Muhammad* states that an analysis of the enforceability of the waiver must focus on the putative class member's average claimed damages, as opposed to Pineda's individual claimed damages.  *Muhammad*, 189 N.J. at 25 ("Our analysis does not focus solely on the ability of Muhammad to individually vindicate her statutory rights.  Our consideration of 'the public interests affected by the contract' under *Rudbart* compels a broader inquiry into how class-action waivers affect the various interest protected under the CFA.").  Pineda urges this Court to use the same analysis.  (*See* Opposition at 16.)

the type of low-value suit that would not be litigated absent the availability of a class proceeding." *Delta Funding*, 189 N.J. at 47.  Second, franchisees like Pineda will have no difficulty locating an attorney to take their claims on an individual basis.  Attached to Pineda's counsel's Declaration as Exhibit B is an excerpt from Coverall's offering circular that describes the disputes that have arisen between Coverall and its franchisees.  [Dckt. No. 21.]  According to Pineda, this excerpt demonstrates that "[n]umerous other cases have been brought against Coverall by its franchisees around the country alleging essentially th[e] same claim[s]" at issue in this action.  (Opposition at p.4 n.4.)  If that is the case, there is no reason to believe that Pineda could not do the same.  Finally, the Franchise Agreement entitles the prevailing party to recover its attorneys' fees and costs.  As the New Jersey Supreme Court recognized in *Muhammad* and *Delta Funding*, and as the Third Circuit held in *Johnson*, that fact strongly supports the enforcement of a class-action waiver.  225 F.3d at 374 (where fees are recoverable, requiring plaintiffs to arbitrate individually will not "choke off the supply of lawyers willing to pursue claims on [their] behalf").  The parties' class-action waiver should therefore be enforced.

2. **Kristian's "Vindication of Statutory Rights" Theory Is Inapplicable and Unavailing**

Seeking another means by which to evade her agreement, Pineda asserts that the class-action waiver is unenforceable because it supposedly prevents her from vindicating her claimed statutory rights.  This argument, which is premised on the First Circuit's decision in *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), is unavailing.  For even if the "vindication of statutory rights" principle were applicable in this case (and as discussed in Section III it is not), Pineda falls far short of satisfying its standards.

Before commencing its analysis of the class-action waiver before it, the *Kristian* court discussed what it acknowledged was the majority view of the federal appellate courts (including

22

the Third Circuit); namely, that arbitral class-action waivers are fully enforceable.  *Kristian*, 446 F.3d at 55.   Contrary to what Pineda claims, *Kristian* never took issue with the majority's reasoning.  Instead, *Kristian* explained why the majority's approach to class-action waivers did not apply to the specific antitrust case before it.  *Kristian* noted that the appellate cases which had enforced class-waivers involved the application of a comparatively uncomplicated statute (the TILA) to a specific transaction.  *Id*. at 57.   Whether a company's conduct violated the antitrust laws was, in contrast, "a complicated question of fact" that required a plaintiff "to undertake an elaborate factual inquiry ...."  The court characterized the antitrust laws that applied to those facts as "equally complex."  *Id*.

Because of the "sheer complexity" of antitrust cases (*id*. at 57), *Kristian* concluded that enforcing the class-action bar would effectively prevent the plaintiffs from vindicating their statutory rights.  *Id*. at 61.  Several facts reinforced the court's conclusion.  First, the plaintiffs had submitted uncontested affidavits from three experts which established that the necessary expert witness fees for an antitrust case would be a "a minimum of $300,000," and possibly in excess of $600,000.  *Id*. at 58.   Second, prosecuting the antitrust claims would entail the expenditure of "several million dollars of attorneys' time."  *Id*.  Finally, the court noted that even if successful, each individual plaintiff's recovery would range from "a few hundred dollars to perhaps a few thousand dollars" **after** trebling.  *Id*. at 54.  Relying on the disparity between the potential recovery and the costs of litigation, the court concluded that it was unlikely that an attorney would take such an antitrust case on an individual basis.  *Id*. at 59.

*Kristian*'s rationale is inapplicable to this case.  First, this is hardly a complex case. Pineda's allegations fall into two categories: (i) garden-variety fraud and breach of contract claims (*see* Complaint ¶¶11-40); and (ii) claims based on Pineda's allegation that she should be

treated as an employee under state wage laws rather than as an independent contractor.[10]   (*Id.* at

¶¶41-54.)  Neither the facts nor the law associated with those claims is complex.  Prosecuting

them will likely not require any expert testimony, nor will it entail the expenditure of "several

million dollars of attorneys' time."  *Kristian*, 446 F.3d at 56.

Second, Pineda presents a far different case than the one presented in *Kristian*.  In stark

contrast to the plaintiffs in *Kristian*, Pineda has proffered absolutely **nothing** in support of her

claim that proceeding individually will prevent her from vindicating her statutory rights.  Where

"a party seeks to invalidate an arbitration agreement on the ground that arbitration would be

prohibitively expensive, that party bears the burden of showing the likelihood of incurring such

costs."  *Green Tree*, 531 U.S. at 92; *see also Blair v. Scott Specialty Glass*, 283 F.3d 595, 607

(3d Cir. 2002).  Pineda has done nothing whatsoever to satisfy that burden.  *See Fiser v. Dell*

*Computer Corp.*, 2007 WL 2197515, at *14 (N. Mex. Ct. App. Apr. 30 2007) (distinguishing

*Kristian* because the plaintiff had not made any showing as to the costs of arbitrating his claim

individually); *Ornelas v. Sonic-Denver T, Inc.*, 2007 WL 274738, at **6-7 (D. Colo. Jan. 29,

2007) (same).

Finally, as noted above, given the nature of her claim, the possibility of treble damages,

and the availability of attorneys' fees and costs, Pineda should have no trouble locating an

attorney to take her claims on an individual basis.

---

[10]     Pineda's claim that the Massachusetts Supreme Judicial Court ruled that a Coverall franchisee was an employee is incorrect.  In *Coverall North America, Inc. v. Comm'er of the Div. of Unemployment Assistance*, the Court determined that Coverall had not met its burden of showing that a decision of the division of unemployment assistance (which concluded that a particular franchisee was not an independent contractor) was erroneous.  It should be noted that the Internal Revenue Service determined that the same franchisee was an independent contractor.

In short, Pineda has not demonstrated, and cannot demonstrate, that prosecuting her claims individually will prevent her from vindicating her claimed statutory rights.

> **B.** **Pineda's Assertions Concerning The Costs Of Arbitration Are Not A Valid Basis For Not Enforcing Her Agreement To Arbitrate**

Pineda next contends that this Court should not enforce her arbitration agreement because the costs of arbitration (which Pineda agreed to split with Coverall) "may" deprive her of the chance to vindicate her claimed statutory rights. *But see Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 16 (1st Cir. 1999) (recognizing that "arbitration is often far more affordable to plaintiffs and defendants alike than is pursuing a claim in court."); *accord Gay v. Creditinform,* 511 F.3d 369, 393 n.17 (3d Cir. 2007) (same). Pineda's argument – which purports to be premised on *Green Tree* – fails for several reasons.

> **1.** **A Claim Of Excessive Costs May Be Raised Only When Federal Statutory Claims Are At Issue**

To begin with, there are no federal rights at issue in this case. Rather, Pineda asserts only state law claims. Her "vindication of statutory rights" theory is therefore inapplicable.[11]

---

[11]     Pineda cites a number of decisions which address the enforceability of cost-splitting provisions. All of them deal with federal statutes. Moreover, aside from *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) – which is premised on California's unique policy that "a contract to arbitrate between an employer and an employee … raises a presumption of substantive unconscionability" – and *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir. 2001) – which enforced a cost-splitting provision in an employment case – all of those decisions were based on those Courts' then-belief that a provision that required employees to pay all or part of an arbitrator's fees for arbitrating federal statutory claims was unenforceable, regardless of the employee's actual ability to pay. (The issue was not addressed by the majority's opinion in *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998), but rather by a concurring opinion.) As the Eleventh Circuit recognized in a post-*Paladino* decision, and as *Bradford* makes clear, these pre-*Green Tree* decisions are inconsistent with *Green Tree*, which held that the party seeking to avoid arbitration based on the costs or arbitration is required to come forward with **individualized** proof regarding those costs and his or her alleged inability to pay. *See Musnick v. King Motor Co.*, 325 F.3d 1255, 1259-1260 (11th Cir. 2003); *Bradford*, 238 F.3d at 549.

2.     ***Pineda Has Not Proved That She Is Unable To Afford Arbitration***

a.     **Pineda's Claim That She Does Not Have To Prove That She Cannot Afford Arbitration Is Contrary To *Green Tree***

Further, even if an analysis of the cost-splitting provision were appropriate, Pineda has not met "the high threshold" of proving that the provision prevents her from being able to vindicate her statutory rights. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1054 (8th Cir. 2004). In *Green Tree*, the claimant attempted to avoid her obligation to arbitrate by asserting that paying the costs associated with arbitration could force her to forego her federal statutory rights. *Green Tree*, 531 U.S. at 90. Addressing this contention, the Supreme Court raised the possibility that "the existence of large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* The Supreme Court made clear, however, that "[w]here … a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. To satisfy this burden, a party seeking to avoid arbitration must "present specific evidence of likely arbitrators' fees and [her] financial ability to pay those fees so that the court can determine whether the arbitral forum is accessible to the

party. …  If the party does not meet its burden, the district court must honor the arbitration agreement and compel arbitration." *Faber*, 367 F.3d at 1053, 1054.[12]

Pineda has made virtually no effort to prove that the costs of arbitration would somehow prevent her from vindicating her statutory rights.  Rather than satisfy her burden, Pineda claims that this Court should hold that the mere existence of a cost-splitting provision satisfies Pineda's burden to prove the likelihood of incurring prohibitive costs.  (*See* Opposition at 20.)  But that is the very proposition that *Green Tree* rejected, as the Third Circuit recently recognized:

> [The plaintiff] would have us hold that the mere existence of a fee-splitting provision in an agreement would satisfy the claimant's burden to prove the likelihood of incurring prohibitive costs under *Green Tree*, 531 U.S. at 92, 121 S. Ct. 513.  We decline to do so.  It would be inconsistent with *Green Tree* and would run counter to the strong federal preference for arbitration and the liberal policy regarding arbitration.

*Blair*, 283 F.3d at 610; *accord Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001); *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702 (5th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003); *Burden v. Check into Cash, LLC*, 267 F.3d 483, 492 (6th Cir. 2001), *cert. denied*, 535 U.S. 970 (2002); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003); *Faber v. Menard, Inc.*, 367 F.3d 1048, 1054 (8th Cir. 2004); *Musnick v. King Motor Co.*, 325 F.3d 1255, 1259 (11th Cir. 2003).  This Court should likewise reject it.

---

[12]      Pineda decries what she claims are the "scorched-earth litigation tactics" that Coverall used to determine whether two franchisees in another lawsuit (the *Machado* case) were in fact able to afford the costs of arbitration.  (Opposition at 22.)  The district court in the *Machado* case ordered this discovery after it rejected the same assertion that Pineda asks this Court to accept – namely, that the Court and Coverall should be forced to accept as true counsel's unsupported proclamation that her client could not afford the costs of arbitration.  More importantly, the only reason that discovery turned contentious was because the franchisees' counsel attempted to conceal the franchisees' assets.  In retrospect, it is not surprising that counsel took these efforts, as discovery showed that one of the two supposedly "indigent" franchisees (i) owned interests in real estate in Brazil and Florida, (ii) had tens of thousands of dollars in savings accounts, and (iii) sent over $10,000 to her family one month before she submitted an affidavit to the federal court stating that she had no money to pay the AAA's filing fee.

**b.**     **Pineda's "Evidence" Is The Very Same Evidence The Supreme Court Found Insufficient In *Green Tree***

As a fall-back argument, Pineda summarily asserts that even if she had to make some showing, her papers suffice.  This argument merits little attention.  Pineda's materials – which consist of (i) a reference to the administrative fees charged by the AAA in employment cases, and (ii) a citation to a case discussing the average daily rates for arbitrators – are the very same "evidence" the Supreme Court found wanting in *Green Tree*.  531 U.S. at 90 n.6, 91 (affidavit that discussed the filing fees generally imposed by the AAA and the average daily fees for an arbitrator "provide[d] no basis on which to ascertain the actual costs and fees to which [the plaintiff] would be subject in arbitration" and were insufficient "to justify the invalidation of an arbitration agreement"); *accord Blair* 283 F.3d at 608 (affirming conclusion that affidavit which claimed inability to pay, set forth assets, monthly income, debt and monthly bills was "inadequate"); *Faber*, 367 F.3d at 1054 (employee who did not provide evidence of his particular financial situation or "evidence necessary to estimate the length of the arbitration and the corresponding amount of arbitrators' fees" "failed to meet his burden of proof that the arbitrators' fees make the agreement unconscionable due to their prohibitive costs").  Because Pineda has done nothing to enable this Court to determine what the anticipated costs would be for her to arbitrate her claims individually, or whether she can afford such costs, her agreement to arbitrate must be enforced.

**3.**     ***If Pineda Demonstrated That She Was Actually Unable to Pay The Costs of Arbitration, Coverall Would Pay Those Costs***

Third, had Pineda satisfied her burden and demonstrated that she was truly unable to afford the costs of arbitration, her remedy is not invalidation of the arbitration agreement. Instead, Coverall would have the option to pay the costs that Pineda was unable to afford.  *See Blair*, 283 F.3d at 610 (once the plaintiff makes an adequate showing of prohibitive arbitration

expenses, the burden switches to the defendant to either prove otherwise or "offer to pay all of the arbitrator's fees.").

In her Opposition, Pineda claims that Coverall should not be allowed to pay costs on a case-by-case basis, but must be "'saddled with the consequences of the provision *as drafted*.'" (Opposition at 23; quoting *Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 218 (3d Cir. 2003) (emphasis in original)). The *Spinetti* opinion, however (which is the source of this argument) is inapposite. In *Spinetti*, the parties' arbitration agreement provided that they would split the costs of arbitration, and bear their own costs and fees, regardless of the outcome of the arbitration. *Id*. at 216. The Third Circuit rejected the defendant's "after-the-fact" offer to pay arbitration costs, holding that the employer should be bound by the agreement it drafted. *Id*. at 217. Putting aside that this is not an employment case and that no federal statutes are at issue (as was the case in *Spinetti*), the arbitration agreement that Coverall drafted and that Pineda assented to expressly grants Coverall the right to pay the costs of arbitration. (*See* Franchise Agreement ¶21(A)(3)). If that agreement is enforced as written (and there is no reason it should not be), Pineda has no basis to complain about the supposed high costs of arbitration.

**4.   *Because Pineda Can Avail Herself Of The AAA's Hardship Procedures, She Should Not Be Permitted To Complain About Costs***

Finally, the AAA provides several avenues by which a litigant can control the costs associated with arbitration. Rule 49 of the AAA's Commercial Arbitration Rules provides that "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." In fact, if a party's gross income falls below 200% of the federal poverty guidelines, the AAA may waive its fee entirely. *See* American Arbitration Association, Administrative Fee Waivers and Pro Bono Arbitrators Services (updated January 1, 2003), available at www.adr.org. The AAA also permits a party to request an arbitrator to serve at a

reduced rate or on a *pro bono* basis – even if that party fails to qualify for a waiver or deferral of the AAA's administrative fees.  *Id.*  These remedies are sufficient to protect parties from any excessive arbitration costs.  *See Am. Heritage Life Ins.*, 294 F.3d at 712; *Boyd v. Town of Hayneville*, 144 F. Supp. 2d 1272, 1280 (M.D. Ala. 2001); *Dabney v. Option One Mortgage Corp.*, 2001 WL 410543, at *4 (E.D. Pa. Apr. 19, 2001).

### C.   The Attorneys' Fees Provision Does Not Prevent Arbitration Of This Dispute

#### 1.   *New Jersey Enforces Contractual Fee Provisions*

Pineda next challenges the attorneys' fee provision in the arbitration agreement – which grants both parties the right to recover fees and costs.[13]  This provision is unenforceable, Pineda seems to claim, because the mere threat of having to pay attorneys' fees "might" deter a plaintiff from pursuing a statutory claim.  Suffice to say, there is no support for this argument, which effectively asks this Court to announce a *per se* rule that attorneys' fee clauses are unenforceable in any dispute (whether arbitrable or not) that involves a statute that does not expressly grant a prevailing defendant the right to recover fees.

While New Jersey generally follows the "American Rule," there is no doubt that parties may agree that, in certain circumstances, one of them may be obligated to pay the other's attorneys' fees.  *See Anders v. FPA Corp.*, 164 F.R.D. 383, 390 (D.N.J. 1995) (attorneys' fees are recoverable when authorized by statute, court rule, or contract.).  Here, the parties have done

---

[13]     Pineda advances the curious argument that the fee provision is not actually mutual. (Opposition at p. 27 n. 19.)  The agreement speaks for itself:

> Should **either Party** incur attorney's fees in order to enforce the terms and conditions of this Agreement, including post-term covenants, whether or not an arbitration proceeding is instituted, the prevailing party shall be entitled to reimbursement by the other party of all litigation costs, including attorneys' fees.

(Franchise Agreement ¶21(C); emphasis added.)

just that.  Pineda has cited no New Jersey case which questions the validity of such a provision.
That, not surprisingly, is because none exists.  Indeed, were New Jersey to adopt a rule that
precluded the enforcement of attorneys' fee provisions in arbitration agreements, that rule would
run afoul of the FAA, which "preclude[s] States from singling out arbitration provisions for
suspect status, requiring that such provisions be placed 'upon the same footing as other
contracts.'"  *Casarotto*, 517 U.S. at 687 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506,
511 (1974)).  Because attorneys' fee provisions are enforceable in litigation under New Jersey
law, they must be deemed enforceable when placed in arbitration agreements.

Pineda's attempt to find support for her position in *Kristian* and *Delta Funding Corp. v.
Harris* is wholly unavailing.  In *Kristian*, the First Circuit struck a provision of an arbitration
agreement that **precluded** the recovery of attorneys' fees because the federal antitrust statutes
expressly allow a prevailing plaintiff to recover such fees.  *Kristian*, 446 F.3d at 54.  There is
absolutely nothing in *Kristian* which questions the enforceability of a provision (like the one at
issue here) that **allows** both parties to recover their attorneys' fees.  *Delta Funding* is similarly
inapplicable.  While Pineda claims that *Delta Funding* held that attorneys' fee provisions in
arbitration agreements are not enforceable because the prospect of "having to shoulder"
attorneys' fees could deter a potential litigant from pursuing a claim, the quotes which Pineda
relies on in support of this argument do not come from the section of the *Delta Funding* opinion
that addressed the enforceability of the attorneys' fee clause.  Rather, the language which Pineda
relies on appears in that section of the court's opinion which discusses the impact of forcing
consumers to bears the costs of arbitration.  *See Delta Funding*, 189 N.J. at 42.  While *Delta
Funding* did hold an attorneys' fee provision to be unconscionable, it did so because the

provision at issue **precluded** the recovery of attorneys' fees – a remedy that was available under the federal statutes at issue – "regardless of which party prevail[ed] in the arbitration." *Id.* at 44.

Unlike *Kristian* and *Delta Funding*, the arbitration agreement in this case expressly **allows** the prevailing party to recover its fees. There is nothing unconscionable about that.

### 2. Because The Fee Provision Applies In Both Litigation And Arbitration, It Is Not A Valid Basis For Challenging The Enforceability Of The Arbitration Agreement

Moreover, because the fee provision applies in both litigation and arbitration, it does not impose any "risks on parties initiating arbitration that they would not be exposed to in court," as Pineda claims. (Opposition at p. 27.) Therefore, the fee provision is an impermissible basis on which to challenge the enforceability of the arbitration agreement. As noted above, *Green Tree* established the principle that a party could seek to invalidate an arbitration agreement if the party were able to show that large arbitration costs would preclude her "from effectively vindicating … federal statutory rights in the arbitral forum." 531 U.S. at 90. However, "[t]he cost of arbitration, as far as its deterrent effect, cannot be measured in a vacuum ….'" *Bradford*, 238 F.3d at 556 n.5. "Rather, an appropriate case-by-case inquiry must focus upon a claimant's expected or actual arbitration costs and his ability to pay those costs, measured against a baseline of the claimant's expected costs for litigation and his ability to pay those costs." *Id.*; *accord James v. McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005). In other words, "[t]he court must evaluate the likely cost of arbitration not in absolute terms, but **relative to the likely costs of litigation**." *Cooper v. MRM Investment Co.*, 367 F.3d 493, 511 (6th Cir. 2004) (emphasis in original); *accord Bradford*, 238 F.3d at 556. This principle reflects the obvious: if the costs of arbitration were less than or equal to the costs of litigation, those costs could not be deemed an impediment to a plaintiff's assertion of his or her federal statutory rights. *See Bradford*, 238 F.3d at 556 ("Indeed, we fail to see how a claimant could be deterred from pursuing his statutory

rights in arbitration simply by the fact that his fees would be paid to the arbitrator where the overall cost of arbitration is otherwise equal to or less than the cost of litigation in court.").

The prevailing party fee provision in the Franchise Agreement has absolutely **nothing** to do with the costs associated with arbitration.  The fee provision would apply whether this matter was resolved in arbitration or litigation.  Because the attorneys' fees that Pineda may have to pay are not a function of the arbitration process, those fees cannot be deemed a cost of arbitration. As a result, the fee provision cannot be a basis for avoiding the agreement to arbitrate.

### 3. *The Mere Risk That Pineda "Might" Have To Pay Attorneys' Fees Is Too Speculative To Warrant Invalidating The Arbitration Agreement*

Further, the risk that Pineda **might** be required to pay Coverall's attorneys' fees is not a sufficient basis for permitting her to evade her obligation to arbitrate.  In *Green Tree*, the Supreme Court held that "[t]he 'risk' that [the claimant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."  531 U.S. at 91.  Pineda's assertion that she should not have to arbitrate because she "might" have to pay Coverall's fees is speculative at best.  None of Pineda's claims has been arbitrated, and Coverall has not been declared the prevailing party in arbitration.  As a result, Pineda has not been asked to pay **any** of the fees which Coverall has incurred (or will incur).  Moreover, while Coverall is confident that it will prevail at the arbitration hearing, it is not clear that Pineda will **ever** be asked to pay those fees.  The mere risk that she may have to pay those fees is not a sufficient basis for striking the fee provision, as the various courts which have addressed this issue have held:

> [A]t this point Plaintiff has not been assessed with any fees, nor is it certain that he ever will be.  [Citations omitted.]  Given these facts, we cannot conclude that the arbitration agreement constitutes a barrier to vindication of Plaintiff's rights. Plaintiff's speculation about prohibitive costs is just that-speculation; this is not enough to invalidate an otherwise enforceable arbitration provision.

*Goodman v. ESPE America, Inc.*, 2001 WL 64749 (E.D. Pa. Jan. 19, 2001); *accord Musnick*, 325 F.3d at 1260 (collecting cases); *Rajjak v. McFrank and Williams*, 2001 WL 799766, at *4 (S.D.N.Y. July 13, 2001).

### D. The Remedy Limitation And The Punitive Damages Waiver Do Not Make Pineda's Arbitration Agreement Unenforceable

Pineda's claim that the remedy limitation in ¶8 of the Franchise Agreement is unenforceable is premised on a fundamental misconception as to the scope of that provision. As the plain terms of the Franchise Agreement make clear, Paragraph 8 dictates only the damages Pineda would be entitled to if Coverall failed to offer her the amount of initial business it was required to offer under the Franchise Agreement. Accordingly, Paragraph 8 governs only Pineda's claim for breach, and in no way limits any of Pineda's claimed statutory rights. Because New Jersey law permits contracting parties to fix their remedy in the event of a breach, this provision is enforceable. *See Utica Mutual Ins. Co. v. DiDonato*, 187 N.J. Super. 30, 43 (App. Div. 1982) ("Where the parties have agreed upon the precise method by which damages shall be computed or assessed, the Court is bound by their contract.").

Furthermore, this claim is appropriately resolved by the arbitrator, not this Court. "[T]he waiver of state law rights unrelated to the provision of a judicial forum" cannot be asserted to avoid an arbitration agreement. *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 231 (3d Cir.), *cert. denied*, 522 U.S. 915 (1997). "Rather, the party challenging the validity of such waivers must present her challenge to the arbitrator, who will determine the validity and enforceability of the waiver of asserted state law rights." *Id*. (holding that it was for the arbitrator to determine whether the party had waived her rights to attorneys' fees and punitive damages).

Pineda's claim that the arbitration agreement is unenforceable because it precludes an award of exemplary or punitive damages is likewise incorrect.  First, punitive damages are not the same as treble damages.  *See Int'l Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J. Super. 275, 302 (App. Div. 2006) (discussing the difference), *rev'd on other grounds*, 192 N.J. 372 (2007).  Therefore, the punitive damages waiver does not affect any "entitlement" to treble damages under any statute.  Second, as noted above, "[t]he availability of punitive damages is not relevant to the nature of the forum in which the complaint will be heard … [t]hus, availability of punitive damages cannot enter into a decision to compel arbitration."  *Peacock*, 110 F.3d at 232.  Pineda's challenge to the enforceability of this waiver must therefore be presented to the arbitrator.

### E.    The Contractual Limitations Period Is Enforceable

While she cites no supporting New Jersey law, Pineda next contends that the Franchise Agreement's two-year contractual limitations period – which applies to both parties, and which applies regardless of the forum for this dispute – is unenforceable.  This argument, which is premised entirely on opinions from the Ninth Circuit, ignores New Jersey authority entirely.  The law is settled in New Jersey that contracting parties may agree upon a shorter limitations period as long as it is reasonable.  *See Sherwood Jewelers-Newark, Inc. v. Philadelphia Nat'l Ins. Co.*, 102 F. Supp. 103, 104 (D.N.J. 1952).  This is true even if the limitations period shortens the time for asserting statutory claims.  *See Mirra v. Holland Am. Line*, 331 N.J. Super. 86, 91 (App. Div. 2000) (180-day limitations provision was reasonable and barred plaintiff's claim under the New Jersey Consumer Fraud Act).  The provision in the parties' arbitration agreement cannot be held to any different standard.

Moreover, Pineda's argument would force this Court to engage in the very analysis that the Third Circuit held impermissible in *Peacock*.  *See Peacock*, 110 F.3d at 231-32 ("here we

leave it to the arbitrator to determine whether Peacock has waived her right to attorney's fees or to a two-year statute of limitations."). To the extent Pineda believes that the contractual limitations period is unenforceable, she must make that argument to the arbitrator.

    **F.    The Confidentiality And No-Collateral-Estoppel Provisions Are Enforceable**

    Pineda's final argument asserts that the arbitration agreement is unenforceable because it requires that arbitration awards be kept confidential and precludes awards from having preclusive effect in arbitrations between Coverall and other parties. However, Pineda never explains why these provisions are unenforceable as applied to her or, more importantly, what statutory rights (if any) they implicate. If this Court rejects Pineda's attempt to evade her agreement to arbitrate, Pineda and Coverall will submit their claims to an arbitrator who will render an award. Whether that award is confidential or has a preclusive effect in proceedings involving **other** parties will have no impact on Pineda or her claimed statutory rights.

    In any event, Pineda's claim that the confidentiality provision is unenforceable is legally unfounded. Pineda's argument is premised entirely on a Ninth Circuit opinion, *AT&T Corp. v. Ting*, 319 F.3d 1126 (9th Cir.), *cert. denied*, 540 U.S. 811 (2003). But *Ting* (which was decided under California law) is premised on the conclusion that a confidentiality requirement violated California's Consumer Legal Remedies Act. That Act does not apply here. More importantly, *Ting* is out of step with the great weight of authority, including a decision from the Third Circuit. *See*, *e.g.*, *Lloyd v. Hovensa*, 369 F.3d 263, 275 (3d Cir. 2004); *Iberia Credit Bureau v. Cingular Wireless*, 379 F.3d 159, 175-76 (5th Cir. 2004); *Caley v. Gulfstream Aerospace*, 428 F.3d 1359, 1378-79 (11th Cir. 2005), *cert. denied*, 547 U.S. 1128 (2006) The fact that the majority of courts have rejected *Ting* is not surprising. Arbitration is, by nature, a **private** means of dispute resolution. In fact, privacy is one of the main reasons parties choose to arbitrate. *See Heher v. Smith, Stratton, Wise, Heher and Brennan,* 170 N.J. 213, 221 (2001) ("arbitration is a preferred

method of dispute resolution because, among other reasons, it combines the advantages of privacy and efficiency."). A provision that reinforces one of the primary benefits of arbitration can hardly be deemed unenforceable. *See Parilla v. IAP Worldwide Servs. VI, Inc*., 368 F.3d 269, 279-80 (3d Cir. 2004) (a confidentiality provision in an arbitration agreement is not unconscionable because "there is nothing inherent in confidentiality that favors or burdens one party *vis-à-vis* the other" and it would not impede any party's ability to obtain relief); *accord Iberia Credit Bureau*, 379 F.3d at 175-76.

Nor can the provision which provides that the arbitrator's award shall only be binding on Pineda and Coverall (and Pineda notably fails to cite to any case from **any** jurisdiction which supports this argument). Arbitrators are not bound by the rules of evidence or, as a general rule, by judicial precedent, their decisions are subject to limited review, there is usually no transcript of the proceedings, and arbitrators do not have to give reasons for their decisions. Coverall has accepted these disadvantages because of the many advantages that arbitration affords. However, it has not accepted, nor would any rational party accept, the risk that the decision of one arbitrator would be deemed binding on Coverall with respect to its 8,000 other franchisees. As the California Supreme Court explained, agreeing to arbitrate a dispute

> does not mean each arbitral party also consents that issues decided against him by this informal, imprecise method may bind him, in the same manner as a court trial, in *all future* disputes, *regardless* of the stakes, against *all* adversaries, known and unknown. On the contrary, common sense weighs against the assumption that parties contemplate such remote and collateral ramifications when they agree to arbitrate controversies between themselves. … *The very fact* that arbitration is by nature an informal process, not strictly bound by evidence, law, or judicial oversight, suggests reasonable parties would hesitate to agree that the arbitrator's findings in their own dispute should thereafter bind them in cases involving different adversaries and claims.

*Vandenberg v. Superior Court*, 21 Cal. 4th 815, 832 (Cal. 1999) (emphasis in original).[14]   This

Court thus should not excuse Pineda from arbitrating her dispute, privately, with Coverall.

## IV.   IF THIS COURT FINDS ANY PROVISION IN THE ARBITRATION AGREEMENT UNENFORCEABLE, THAT PROVISION SHOULD BE SEVERED AND THE OBLIGATION TO ARBITRATE PRESERVED

If this Court deems any provision in the arbitration agreement unenforceable, the

appropriate remedy is not the wholesale avoidance of the agreement, but the severance of any

unenforceable provision.   The severability of a contractual provision depends upon the intent of

the contracting parties.   *Riddlestorffer v. City of Rahway,* 82 N.J. Super. 423, 428 (Law Div.

1964).   Here, the parties intended to preserve their agreement to arbitrate.   Paragraph 28 of the

Franchise Agreement provides that "[i]f any term, provision, covenant, or condition of this

Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the

remainder of the provisions shall remain in full force and effect and shall in no way be affected,

impaired, or invalidated."   That clear language should be enforced as written.

Severing any unenforceable provision would not only be consistent with New Jersey law

and the parties' agreement, but with the policies underlying the FAA.   *See Kristian*, 446 F.3d at

62 (severing an unenforceable provision and "saving the arbitral forum" is "consistent with the

federal policy favoring arbitration"); *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682 (8th

---

[14]      While Pineda claims that this provision is contrary to the purposes of collateral estoppel, the usual justifications for the application of collateral estoppel do not apply when a third party seeks to use an arbitration award entered in a proceeding to which it was not a party (*i.e.*, non-mutual offensive collateral estoppel).   First, a private arbitrator's award is outside the judicial system.   Therefore, denying the award collateral estoppel effect has no adverse impact on judicial integrity.   Second, because private arbitration does not involve the use of the judicial system, later re-arbitration does not entail a duplication of judicial resources.   Finally, when collateral estoppel is invoked by a nonparty to the arbitration, the doctrine does not serve the policy against harassment by vexatious litigation.   Rather, the doctrine is being invoked by someone seeking to gain vicarious advantage from a litigation victory won by another party.

Cir. 2001) (same).  "If the offensive terms [of an arbitration agreement] are severable, then the court must compel arbitration according to the remaining, valid terms of the parties' agreement. The court should deny [a] motion to compel arbitration **only** where the invalid terms of the arbitration clause render the **entire** clause void as a matter of state law."  *Terminix*, 432 F.3d at 1331 (emphasis added); *accord Spinetti*, 324 F.3d at 220; *Muhammad*, 189 N.J. at 26.  Because the severance of any supposedly unenforceable provision would not render the rest of the arbitration agreement void, severance of any offending provision – followed by an order compelling arbitration – remains the proper remedy.

## **CONCLUSION**

For the foregoing reasons, Coverall's petition to compel arbitration should be granted.


        /s/ Steven F. Gooby
Steven F. Gooby
MORISON ANSA HOLDEN
ASSUNCAO & PROUGH LLP
Two Tower Center Blvd., Suite 1600
East Brunswick, New Jersey 08816-1100
(732) 993-1850

Norman M. Leon (*pro hac vice* admission pending)
DLA PIPER US LLP
203 North LaSalle Street, Suite 1900
Chicago, IL  60601
(312) 368-4000


Dated: March 24, 2008