**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

COVERALL NORTH AMERICA, INC., )
                                       )
            Petitioner, )
                                        )
                                        )      Civil Action No. 07-03012
              v. )
                                         )
DENISSE PINEDA, )
                                        )
            Respondent. )
                                         )

**RESPONDENT'S REPLY BRIEF IN OPPOSITION TO PETITION OF
COVERALL NORTH AMERICA, INC. TO COMPEL ARBITRATION**

       As Respondent explained in her brief in opposition to Coverall's petition to compel arbitration, the precise issue before this Court—the enforceability of Coverall's arbitration provision—is pending before a federal court in Massachusetts, in a case filed several months before this one.  That case was filed by Respondent Pineda and several other named plaintiffs from around the country and is alleged as a national class action, asserting that Coverall has engaged in classwide violations of the wage laws, laws governing unfair and deceptive business practices, and state common law.  See Awuah, et al. v. Coverall North America, Inc., D. Mass. Civil Action No. 07-10287, 2d Amended Complaint, attached to Respondent's Opp. Br. as Exhibit A.  Significantly, on April 4, 2008, the federal court in Massachusetts issued an order concluding that it has jurisdiction over the Awuah case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the plaintiffs in that action have alleged damages for the class totaling more than $200 million.

Additionally, the federal court in the <u>Awuah</u> action is poised to rule on numerous motions, and its rulings would impact the proceedings here.  In that case, the plaintiffs, including Pineda, moved to strike the same arbitration clause pursuant to which Coverall is seeking to compel arbitration in this action, and the Court recently ruled that plaintiffs' motion to strike is to be treated "as a motion to declare the arbitration clause void as unconscionable" and ordered that Coverall respond to that motion by the end of this week.  <u>See</u> <u>Awuah</u> Docket Sheet, 4/04/2008 Docket Entry, attached as Exhibit A.  Also pending before the federal court in Massachusetts are the following motions:  (1) a motion to file a third amended complaint which adds named plaintiffs from California, Texas, and Pennsylvania (in addition to the current named plaintiffs from Massachusetts, New Jersey, and Florida), Ex. A (Docket #65); (2) Plaintiff's motion for permission to have contact with Coverall's former Chief Financial Officer, who has stated that he has information regarding various business practices at Coverall which are directly relevant to plaintiffs' claims in the <u>Awuah</u> action, Ex. A (Docket #66); and (3) Coverall's motion for a protective order, seeking to prevent the plaintiffs from having contact with its former Chief Financial Officer, despite the fact that he has information relevant to the claims in the case, Ex. A (Docket #70).

In light of the posture of the <u>Awuah</u> action, in which plaintiffs anticipate a ruling in the near future on the precise issue before this Court—the enforceability of Coverall's arbitration provision—and in light of the fact that a decision in the <u>Awuah</u> action will likely have impact not only on Respondent Pineda but also on a putative nationwide class of more than 4,500 Coverall franchisees, Respondent

2

Pineda requests that this Court stay this action pending a decision on Plaintiffs' "motion to declare the arbitration clause void as unconscionable" in the Awuah action.

## ARGUMENT

As described above, this Court should defer ruling pending a decision by the Awuah court on the enforceability of Coverall's arbitration provision, a decision which is expected imminently.  In any event, however, Pineda responds to the arguments raised by Coverall in its response brief as follows (to the extent that those arguments have not already been briefed in prior submissions to this Court).

## I.    THE ENFORCEABILITY OF THE ARBITRATION PROVISION IS FOR THE COURT TO DECIDE IN THE FIRST INSTANCE.

It is a cornerstone of the Supreme Court's jurisprudence on the issue of arbitrability of disputes that "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (internal quotation marks omitted).  Specifically, the Howsam Court concluded that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."  537 U.S. at 84.

Even Coverall acknowledges that "a court ordinarily addresses challenges to the validity of an arbitration agreement," Coverall Resp. Br. at 5, but then makes the strained argument that the arbitration provision's incorporation of the

American Arbitration Association's rules constitute clear and unmistakable evidence that the parties intended the arbitrator to decide the enforceability of the arbitration provision.  This argument fails for several reasons.  First, Coverall itself has not acted in a manner indicating that it believed the arbitrator should decide issues of arbitrability—instead of filing a demand for arbitration against Pineda or against any of the other named plaintiffs in the <u>Awuah</u> action, Coverall chose to institute this action in court to compel arbitration and to litigate the issue of the enforceability of the arbitration provision aggressively in both the <u>Awuah</u> action and this action.  Indeed, over the past year and a half since the <u>Awuah</u> action was filed, Coverall has itself filed at least seven substantive motions in that action, Exhibit A (Docket #s 14, 16, 18, 20, 22, 26, 70), as well as instituting this action in federal court in New Jersey and has produced countless pages of briefing in the two cases.  It has taken absolutely no steps to present the issue of arbitrability to an arbitrator.  Accordingly, in light of its actions, Coverall has waived its right to present the issue of arbitrability to an arbitrator.  <u>See Ehleiter v. Grapetree Shores, Inc.</u>, 482 F.3d 207, 223 (3d Cir. 2007) (party to otherwise valid and binding arbitration agreement may waive its right to arbitrate by actively participating in court litigation).[1]

---

[1]    Significantly, the Third Circuit has held that, "[a]lthough waiver is not to be lightly inferred, we will not hesitate to hold that the right to arbitrate has been waived where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration."  <u>Ehleiter</u>, 482 F.3d at 223.  Here, Pineda and the other named plaintiffs in the <u>Awuah</u> action have unquestionably been prejudiced by Coverall's litigation in this Court and in the federal court in Massachusetts.  Indeed, the parties have been held up with threshold procedural issues raised in Coverall's motions for well over a year, and the plaintiffs have been required to spend extensive time and resources briefing these matters while any exploration of the merits of the case has been put on indefinite hold.

4

Moreover, there are at least two other reasons why it is inappropriate for an arbitrator to decide arbitrability in this case.  First, Pineda asserts (as do the other plaintiffs in the Awuah action) that the arbitration provision is unconscionable.  Specifically, Pineda argues that the arbitration provision is one-sided and that the bargaining power between the parties was so skewed that the provision cannot be enforced.  See, e.g., Respondent's Opp. Br., Section III.  Because of this inequality of bargaining power, Pineda and the other "franchisees" cannot be said to have knowingly and intentionally entered into a contract that deprived them of the right to have a court decide the enforceability of the arbitration provision.[2]  Second, as discussed in Pineda's opposition brief, Section I and in Section II, infra, Coverall's arbitration provision does not encompass Pineda's statutory claims in any event, under the New Jersey Supreme Court's decision in Garfinkel v. Morristown Obstetrics & Gynecology, Associates, P.A., 168 N.J. 124, 134-35 (2001).  The parties cannot have intended an arbitrator to decide arbitrability as to claims that are outside the scope of the arbitration provision.

## II.     PINEDA'S STATUTORY CLAIMS ARE NOT COVERED BY THE ARBITRATION PROVISION UNDER NEW JERSEY LAW.

### A.     Under the FAA and Garfinkel, Coverall's arbitration provision fails to encompass Pineda's statutory claims.

Coverall attempts to distinguish the New Jersey Supreme Court's decision in Garfinkel by arguing that Coverall's arbitration provision is governed by the

---

[2]     This is particularly so in light of the fact that Coverall is relying on the incorporation of the AAA rules in arguing that the parties intended for an arbitrator to decide arbitrability.  In order for Pineda and the other franchisees to have understood this "intent," they would have had to read and comprehend the arbitration provision buried in Coverall's franchise agreement and then seek out the AAA rules referenced therein and understand the language of those rules.

Federal Arbitration Act (FAA), not state law.  This argument is without merit for at least three reasons.  First, the FAA has been in effect for decades—since long before the New Jersey Supreme Court's decision Garfinkel in 2001.  Accordingly, like Coverall's arbitration provision, the Garfinkel arbitration agreement was also governed by the FAA.  In fact, the Garfinkel court noted that, "[b]ecause of the favored status afforded to arbitration, '[a]n agreement to arbitrate should be read liberally in favor of arbitration'" 168 N.J. at 132, the precise interpretation of arbitration agreements set forth in the cases cited by Coverall.

Second, despite the favored status of arbitration, it is well settled that, under the Federal Arbitration Act, "'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.'" Muhammad v. County Bank of Rehoboth Beach, Delaware, 189 N.J. 1, 12 (2006).  Moreover, a party may only be subject to arbitration under the FAA if there is a valid agreement to arbitrate.  See Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997) ("Under the FAA the district court must be satisfied that the parties entered into a valid arbitration agreement.").  Indeed, this is the basis on which the Garfinkel court struck down the arbitration agreement at issue there, holding that:  "[i]n the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute.  Subsumed in this principle is the proposition that only those issues may be arbitrated which the parties have agreed shall be."  168 N.J. at 132 (internal quotation marks omitted).

6

Finally, ignoring the repeated pronouncements by the Supreme Court that arbitration agreements are still subject to state contract law, Coverall argues that the FAA implicitly preempts Garfinkel's holding that arbitration agreements that do not specifically include statutory claims do not cover such claims. This argument must fail. Coverall has wholly ignored that, under the FAA, an arbitration agreement is only enforceable if it allows for the vindication of statutory rights. See Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006). Accordingly, Garfinkel and the FAA are harmonious on this point—they only require parties to submit statutory claims to arbitration if the applicable arbitration agreement applies explicitly to statutory claims and allows full vindication of those claims.

Instead of contradicting the FAA, the Garfinkel decision is in keeping with the federal policy that arbitration agreements may be stricken under state contract principles, including the lack of a valid agreement to arbitrate. As in Garfinkel, this Court should hold that Coverall's arbitration provision does not encompass Pineda's (and other class members') statutory claims because of its failure to specify inclusion of such claims.

**B.    Under Garfinkel, Coverall's arbitration provision fails to inform the cleaning workers that they are waiving their right to pursue statutory claims in court and therefore must be stricken.**

Coverall claims that a New Jersey Supreme Court case, Martindale v. Sandvik, Inc., 173 N.J. 76 (2002), which was issued one year after Garfinkel v. Morristown Obstetrics & Gynecology, Associates, P.A., 168 N.J. 124, 134-35 (2001), limited the scope of the Garfinkel decision such that the arbitration

7

agreement in this case is enforceable under New Jersey law despite that fact that

it makes no reference to a waiver of statutory remedies.  Coverall argues that

because <u>Martindale</u> enforced an arbitration agreement that did not make any

reference to statutory rights, any agreements that do "not contain any limiting

references" are now enforceable under New Jersey law.  However, this argument

misses the key distinction between <u>Martindale</u> and <u>Garfinkel</u>, which is described

by a New Jersey District Court addressing the same question:

> [W]hile the arbitration provision in <u>Martindale</u> did state, broadly, that "all
> disputes relating to my employment with Sandvik or termination thereof
> shall be decided by an arbitrator," the provision also included an
> agreement "to waive my right to a jury trial in any action or proceeding
> related to my employment with Sandvik." Moreover, in finding that the
> arbitration clause in <u>Martindale</u> was a clear and unambiguous waiver, the
> New Jersey Supreme Court relied on the provision's specific waiver of the
> right to a jury trial. <u>Martindale</u> is therefore consistent with the requirement
> in <u>Garfinkel</u> that an arbitration agreement specifically mention a waiver of
> statutory remedies and/or a jury trial. Thus, the dispute resolution
> provision in the present case fails under <u>Martindale</u> as well as <u>Garfinkel</u>,
> since the provision in Plaintiff's employment contract includes neither a
> waiver of statutory remedies nor a waiver of the right to a jury trial."

<u>Samukai v. Emily Fisher Charter School of Advanced Studies,</u> 2007 WL 316449,

*5 (D.N.J., 2007); <u>see also</u> <u>Rockel v. Cherry Hill Dodge</u>, 368 N.J. Super 577,

584-585 (2004) (same); <u>Gilbert v. Fox & Roach, LP</u>, 2005 WL 2347121, *4

(D.N.J.,2005)  ("Without… an explicit mention of judicial remedies or statutory

rights, an arbitration provision is too ambiguous to constitute a waiver of these

rights under New Jersey law"); <u>Hemberger v. E*Trade Financial Corp.</u>, 2007 WL

4166012, *4 (D.N.J.,2007) (enforcing agreement that stated "You and the

Company hereby waive your respective rights to have any Disputes tried to a

judge or jury" because the agreement "clearly conveys that the parties are

waiving their right to sue and to be heard by a judge or jury"); <u>Bloom v. Jersey</u>

City Mun. Utilities Authority, 2008 WL 360986, *2 (D.N.J.,2008) (enforcing arbitration agreement that stated "I will use [employer's] internal and external employment dispute resolution process to resolve legal claims against [employer]-therefore, *rather than go to court or to a government agency for a hearing to decide my legal claim*") (emphasis added).

Consequently, Coverall is simply wrong to state that its arbitration provision is enforceable under New Jersey law.  Because the provision makes no mention of a waiver of statutory remedies or a waiver of the right to sue and to be heard by a judge or jury, it is unenforceable in its entirety.

Moreover, the number of federal district courts that have applied New Jersey law in cases involving arbitration agreements, see supra, makes it clear that it is state law that is applicable when determining whether a party agreed to an arbitration agreement.  As stated in Gilbert, 2005 WL 2347121, *3:

> The New Jersey Supreme Court's requirement of specific language to waive the right to sue appears to be in tension with the FAA's policy that "a state cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts." Leodori, 814 A.2d at 1104. This tension is also implicated by the fact that, while an arbitration agreement is, by its nature, a waiver of the right to seek a judicial forum, the United States Supreme Court nevertheless determined that doubts should be resolved in favor of arbitration. Cone Memorial Hosp., 460 U.S. at 24-25. In spite of these concerns, however, this Court is bound by New Jersey principles of contract interpretation, including New Jersey courts' determinations of what does and does not constitute ambiguity in a contract.

This Court is similarly bound by New Jersey principles of contract interpretation and therefore must find that this arbitration agreement in unenforceable.

**III.    PINEDA'S CLAIMS ARE WITHIN THE SCOPE OF THE VINDICATION OF STATUTORY RIGHTS ANALYSIS, APPLIED BY THE FIRST CIRCUIT IN THE KRISTIAN CASE.**

Coverall asks this Court to ignore federal appellate precedent from the First Circuit, which holds that arbitration agreements that prevent parties from fully vindicating their statutory rights are not enforceable. See Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006). Pineda has extensively explained this theory and its application here, as well as the growing trend across the country to strike provisions of arbitration agreements that prevent the vindication of rights, in the initial opposition brief, Sections II and III. Coverall's attempts to distinguish this case from those to which the vindication of statutory rights analysis apply are unavailing.

Primarily, Coverall argues that the vindication of statutory rights analysis does not apply here because Pineda has alleged state statutory claims, not federal statutory claims. However, in fact, the Kristian court did apply this analysis to state statutory claims—the issue there was whether the arbitration agreement was enforceable as to the plaintiffs' federal and state antitrust claims. Moreover, the policy underlying this analysis—that arbitration agreements should not be used to chill parties' ability to vindicate their rights, see, e.g., Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 663 (6th Cir. 2003)—applies with equal force regardless of whether the substantive claims derive from state law or federal law.

In arguing that the Kristian vindication of statutory rights analysis does not apply to state claims, Coverall has conflated the *procedural* theories for striking arbitration agreements with the *substantive* claims brought by the parties. Coverall is correct that there are state law bases for striking arbitration

10

agreements, such as unconscionability and other contract law principles, and there is the federal basis under the FAA for striking arbitration agreements—the vindication of statutory rights analysis. These *procedural* mechanisms for analyzing the validity of an arbitration agreement are entirely separate from the issue of whether the parties' *substantive* claims are based in federal or state law.

## IV.   COVERALL'S ARBITRATION PROVISION IS PERMEATED WITH UNENFORCEABLE CLAUSES.

As set forth in Pineda's opposition brief, Coverall's arbitration provision contains the following unenforceable clauses:  a prohibition on class actions; a cost-splitting clause; a clause requiring the losing party to pay attorneys' fees; a limitation on remedies; a truncated limitations period; and a confidentiality and no collateral use clause.  See Respondent's Opp. Br., Section III.

### A.   Coverall's class action waiver is unenforceable.

Coverall attempts to distinguish the cases in which courts have invalidated class action waivers, claiming that this case does not involve claims of low dollar amounts for which class actions are the only way in which parties can vindicate their rights.  However, contrary to Coverall's assertion, this case may involve small recoveries for many of the class members—individuals who may have had their franchises for only a short period of time, for example.  Indeed, in its brief to the Awuah court regarding jurisdiction under CAFA, Ex. A (Docket #63), plaintiffs calculated Pineda's damages at under $5,000.  This amount certainly constitutes the sort of small recovery that plaintiffs may be reluctant to pursue individually and as to which it would be difficult to find an attorney to represent a party on an individual basis.

11

Moreover, in light of the relationship between the parties in this matter, which (at the very least) resembles an employer-employee relationship, a class action waiver is particularly problematic. In addition to the problem of small recoveries for class members, there are at least two other ways in which class action waivers benefit employers/franchisors over employees/franchisees. First, many workers may not realize that their rights have been violated or may be reluctant to bring individual suits against their employer for fear of retaliation. See Gentry v. Superior Court, 165 P.2d 556, 784-85 (Cal. 2007). Second, if each worker is required to litigate his or her claim separately, Coverall will benefit by being a repeat player and will be able to hone its arguments in case after case, to the detriment of the individual workers who are trying their cases for the first time. See Davis v. O'Melveny & Myers, 485 F.3d 1066, 1078 (9th Cir. 2007) (confidentiality provision would "place O'Melveny 'in a far superior legal posture' by preventing plaintiffs from accessing precedent while allowing O'Melveny to learn how to negotiate and litigate its contracts in the future.").

**B.      Coverall's cost-splitting clause is unenforceable.**

As set forth in Respondent's opposition brief, Section III.C.1, Pineda has established "the *likelihood* of incurring [arbitration] costs," as required by Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000) (emphasis added), and the likely amount of fees in the precise form that the Third Circuit held was sufficient to strike the arbitration clause in Spinetti v. Service Corporation International, 324 F.3d 212, 217 (3d Cir. 2003), and Alexander v. Anthony International, L.P., 341 F.3d 256, 269 (3d Cir. 2003).

Coverall's attempts to argue that its cost-splitting clause is valid, despite this precedent, should be rejected. Coverall suggests that it may pay Pineda's arbitration costs if she could not afford them. However, a closer look at Coverall's brief shows that it only argues that "Coverall *would have the option* to pay the costs that Pineda was unable to afford." Coverall Resp. Br. at 28 (emphasis added). Coverall's discretionary ability to choose to cover Pineda's arbitration costs does nothing to mitigate the unenforceability of its cost-splitting clause. The issue is the deterrent effect of Coverall's cost-splitting clause—a franchisee who is preparing to file an action against Coverall would not know whether Coverall would agree to pay her share of arbitration costs (something Coverall has never agreed to do before in one of these cases) and the risk that the franchisee would be responsible for these fees would operate as a deterrent from the filing of the action.

Similarly, the existence of the AAA hardship procedures to which Coverall refers does nothing to ensure that Pineda and the other class members will not be required to pay the exorbitant costs of arbitration, and parties should not have to take the risk that they will not be given a fee waiver by the AAA in order to pursue their claims.[3] Reliance on the *possibility* of a fee waiver from the AAA would inevitably have a chilling effect on individuals who had valid claims against Coverall but did not want to risk that their fee waivers would not be granted.

**C.      Coverall's clause requiring the losing party to pay attorneys' fees is unenforceable.**

---

[3]      Moreover, the AAA has the ability to waive filing fees only, not the hourly fees for the arbitrator, which constitutes the far greater expense.

13

For the reasons set forth in Pineda's opposition brief, Section III.C.3, Coverall's attorneys' fees provision is unenforceable. Coverall's arguments to the contrary are without merit. Specifically, Coverall is simply wrong to argue that New Jersey law requires enforcement of all contractual fee provisions. While New Jersey law permits parties to a contract to shift liability for attorneys' fees, "where attorney-fee shifting is controlled by contractual provisions, courts will strictly construe that provision" in light of New Jersey's "strong policy disfavoring shifting of attorneys' fees." Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 221-223 (2002). Thus, there is a presumption against the enforceability of such provisions, not in favor of enforceability as claimed by Coverall.

Coverall is also wrong to argue that Delta Funding Corp. v. Harris has no bearing on this case. 189 N.J. 28 (2006). First of all, Coverall incorrectly claims that the language in Delta Funding which discusses the possibility that such fee provisions will "deter potential litigants from bringing their statutory claims in the arbitral forum" has nothing to do with provisions that shift attorney's fees. Id. at 43.[4] Coverall claims that this language deals only with the shifting of the costs of the actual arbitration. However, as is clear from the fact that the two cases cited by the Court in support of this proposition both dealt with provisions shifting attorney's fees, this language deals with all fee shifting, including the shifting of

---

[4]     The Court in Delta Funding stated that: "It is well understood that fee-shifting provisions can deter a litigant from pursuing a claim. The prospect of having to shoulder all the costs of arbitration could chill [the plaintiff] and similarly situated consumers from pursuing their statutory claims through mandatory arbitration. Other courts that have analyzed the allocation of arbitration costs under federal law, have taken into consideration the possible " 'chilling effect' " that certain cost provisions can have both on an individual claimant and on similarly situated litigants." Id. (internal citations omitted).

14

attorney's fees.  See id.; see also Dare v. Freefall Adventures, Inc., 349 N.J.

Super. at 221-24 (refusing to enforce mandatory attorney fee shifting provision

against a recreational sports participant); N.J. Coal. of Health Care Prof'ls, Inc. v.

N.J. Dep't of Banking and Ins., Div. of Ins., 323 N.J. Super. 207, 263 (App. Div.

1999) (noting that "imposing counsel fees in favor of an insurance company may

chill resort to the dispute resolution process").

        More importantly, Coverall's argument misses the point of the Delta

Funding Court's discussion of the unconscionability of contract provisions that

shift attorney's fees.  Rather than being inapplicable because the provision in that

case precluded either side from recovering attorney's fees, the case is extremely

relevant to this case because its discussion of fee provision focuses on a

plaintiff's right to pursue their statutory rights in the manner required by the

pertinent statute.  See Delta Funding, 189 N.J. at 44 (beginning its discussion of

the attorney fee provision by quoting Martindale, supra, 173 N.J. at 93 and

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628

(1985): "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the

substantive rights afforded by the statute; it only submits to their resolution in an

arbitral rather than a judicial, forum").

        The Court specifically states that, "Just as defendants may not enforce…

waivers that seek a release from a statutorily imposed duty, defendants may not

limit a [plaintiff's] ability to pursue the statutory remedy of attorney's fees and

costs when it is available…" Id.  Furthermore, the Court holds that to the extent

the provision in the plaintiff's contract would prevent her from recovering fees and

costs required under the statute her claim was based on, "it is unconscionable." Id. at 45.  In this case, the statutes under which Pineda seeks to vindicate her rights all grant attorney's fees to a prevailing *plaintiff* and not to prevailing defendant.  See N.J. Stat. Ann. 34:11-56a25, 56:8-1, 56:10-10.  Thus, under New Jersey law, a provision which would require an unsuccessful plaintiff to pay the legal fees of a prevailing defendant is unconscionable and unenforceable.

### D.      Coverall's limitations on remedies are unenforceable.

Coverall claims that New Jersey law requires enforcement of a provision limiting remedies whenever the parties agree to fix their remedy in the event of a breach.  However, while New Jersey law may generally permit parties to agree upon a fixed measure of damages, the courts are not obligated to enforce such a provision in all cases.  See Kennedy Funding, Inc. v. Lion's Gate Development, LLC, 2006 WL 2038496, *4 (D.N.J., 2006) ("Where the parties have agreed upon a measure of damages, the courts are generally bound by that agreement... However, a limitation of damages clause will not apply where a party's "conduct indicates bad faith or some other tortious intent") (internal citations omitted). Here, it is alleged that Coverall intentionally misrepresented to its workers the nature of their cleaning "franchises" and the amount of monthly cleaning business that they are assured to receive.  Accordingly, because Coverall's conduct indicates bad faith intent, New Jersey law does not require enforcement of the remedy limitation provision in paragraph 8 of the Franchise Agreement.  To the contrary, New Jersey law requires a finding that the provision is unenforceable.

Coverall also argues that the enforceability of the punitive damages waiver is not a question for this Court.  This ignores the fact that the Supreme Court itself decided upon the question of the enforceability of such a provision in Green Tree without first submitting the issue to an arbitrator.  See Investment Partners, L.P. v. Glamour Shots Licensing, Inc., 298 F.3d 314, 316 (C.A.5, 2002) (holding that appellate jurisdiction exists to address the enforceability of such a provision and noting that the Supreme Court disposed of a similar argument, without submitting the issue first to the arbitrators, in Green Tree).  Thus, the Court can address the enforceability of the punitive damages waiver and should find the waiver unenforceable.

### E.     Coverall's truncated limitations period is unenforceable.

Coverall argues that the contractual limitations period in the Franchise Agreement is enforceable because such limitations periods are enforced under New Jersey law.  However, such provisions are accepted by the courts only "as long as they do not violate public policy" and are "reasonable."  Mirra v. Holland America Line, 331 N.J. Super. 86, 91, 751 A.2d 138, 140 (N.J. Super. A.D. 2000).  As argued in Pineda's original brief on this issue, see Respondent's Opp. Br., Section III.E, the shortened limitations periods in the Franchise Agreement, which are shorter than their statutory counterparts, clearly impinge on the cleaning workers' rights to fully pursue their statutory claims and are therefore unconscionable and against public policy when applied to employment arbitration agreements.  See Davis v. O'Melveny & Myers, 485 F.3d 1066, 1077 (9th Cir.

17

2007); <u>Graham Oil v. Arco Prods. Co.</u>, 43 F.3d 1244, 1248-49 (9th Cir. 1994); <u>see also</u> <u>Ingle</u>, 328 F.3d at 1175.

**F. Coverall's Confidentiality Agreement and No Collateral Use Clause Is Unenforceable.**

Coverall argues that the holding of <u>AT&T Corp. v Ting</u>, 319 F.3d 1126 (9th Cir.), <u>cert. denied</u>, 540 U.S. 811 (2003), does not apply because it is based on California law and because the Third Circuit has ruled that such provisions are not unconscionable. Coverall's argument fails to mention that the two Third Circuit cases cited by Coverall based their decisions on Virgin Islands law and not New Jersey law. See <u>Lloyd v. Hovensa, LLC.</u>, 369 F.3d 263 (3d Cir., 2004); <u>Parilla v. IAP Worldwide Servs.</u>, 368 F.3d 269, 279-80 (3d Cir, 2004). Furthermore, it fails to recognize that the New Jersey Supreme Court has found such provisions enforceable only when the arbitrator's award is not required to be kept confidential. Specifically, in <u>Delta Funding Corp. v. Harris,</u> the court stated:

> "[T]here is nothing in either the arbitration clause or the rules of the three arbitration administrators requiring that arbitration awards be kept confidential. It is not unconscionable to require that the proceedings before the arbitrator be kept confidential *when the arbitrator's written award is not required to be kept confidential.*"

189 N.J. 28, 50 (2006) (emphasis added). Accordingly, because the Franchise Agreement requires that the arbitrator's written award be kept confidential, the Court must find that this provision is unenforceable.

**V. THE UNENFORCEABLE PORTIONS OF COVERALL'S ARBITRATION PROVISION ARE NOT SEVERABLE, AND THE ENTIRE PROVISION MUST BE STRICKEN.**

Because of the sheer volume of objectionable clauses in Coverall's arbitration provision, as set forth in Pineda's opposition brief, Section III and

Section IV, supra, the arbitration provision must be stricken in its entirety.

Severing the offending provisions will not suffice.  Indeed, Coverall's argument

that the objectionable portions of its arbitration provision may be severed ignores

federal appellate precedent from the Third Circuit and elsewhere holding that,

where objectionable clauses permeate an arbitration agreement, the entire

agreement must be stricken.

Most significantly, in Alexander v. Anthony Intern., L.P., the Third Circuit

held that the limitation period, the limitation on remedies, and the provision

requiring the losing party to pay arbitration expenses in an arbitration agreement

were unenforceable, and it declined to sever those unenforceable provisions

because "unconscionability permeates the agreement . . . and thoroughly taints

its central purpose of requiring the arbitration of employment disputes."  341 F.3d

256, 271 (3d Cir. 2003).

Other circuits have reached similar conclusions.  In Davis v. O'Melveny &

Myers, the Ninth Circuit refused to sever the four unconscionable provisions in

the arbitration agreement at issue, explaining that "[d]espite a 'liberal federal

policy favoring arbitration agreements,' a court cannot rewrite the arbitration

agreement for the parties."  485 F.3d at 1084 (internal citations omitted).

Similarly, in Nagrampa v. MailCoups, Inc., the Ninth Circuit held that the flaws in

an arbitration provision in the parties' franchise agreement could not be remedied

by severance.  The court held that "[t]he MailCoups arbitration provision is so

permeated by substantive unconscionability that it cannot be cured by severance

or any other action short of rewriting the contract."  469 F.3d 1257, 1293 (9th Cir.

19

2006).  Similarly, in <u>Perez v. Globe Airport Sec. Services, Inc.</u>, the Eleventh

Circuit refused to sever an unenforceable cost-splitting provision of an arbitration

agreement, explaining:

> If an employer could rely on the courts to sever an unlawful provision and
> compel the employee to arbitrate, the employer would have an incentive
> to include unlawful provisions in its arbitration agreements. Such
> provisions could deter an unknowledgeable employee from initiating
> arbitration, even if they would ultimately not be enforced. It would also
> add an expensive procedural step to prosecuting a claim; the employee
> would have to request a court to declare a provision unlawful and sever it
> before initiating arbitration. Including an unlawful provision would cost the
> employer little, particularly where, as here, the arbitration agreement
> provides the employee must bear the employer's court costs and
> attorneys' fees incurred defending the agreement if arbitration is
> challenged and the employer prevails.

253 F.3d 1280, 1287 (11th Cir. 2001) (opinion vacated pursuant to stipulation of

dismissal by parties, 294 F.3d 1275 (11th Cir. 2002).

Significantly, in a hearing for a previous case against Coverall in federal

court in Massachusetts, Chief Judge Mark L. Wolf recognized that Coverall's

arbitration provision—the provision at issue here—suffered from the same

deficiency recognized in <u>Alexander</u>, <u>Davis</u>, <u>Nagrampa</u>, and <u>Perez</u>.  As Judge

Wolf explained in court to Coverall's attorney, Mr. Leon:

> I'd be inclined to say the clause that's – if invalid, is the arbitration clause.
> So I'm not saying there's no franchise agreement anymore.  I'm saying
> the franchise agreement exists as if there's no arbitration clause.  I don't
> knock out the fee splitting and the attorneys' fee shifting, I knock out the
> whole arbitration clause . . . .
>
> The reason is that . . . is I don't think employers should be encouraged to
> think they can take very aggressive positions that may be found
> unconscionable and contrary to public policies embodied in statutes like
> Chapter 93A with essentially no risk because if somebody has a
> determination and means to litigate it and the employer loses, the Court
> will just write a more reasonable contract.  I think these agreements, like
> covenants not to compete, have a chilling effect on the exercise of
> people's rights and if they're not drafted reasonably by the sole party that
> drafted them, if they've drafted an unlawful provision, they've taken the

risk and now they're not going to have any arbitration at all.  That's my present view.  All right?

Machado et al. v. Coverall North America, Inc. (consolidated with Coverall North America, Inc. v. Joel Padilha, et al., No. 05-11867 (D. Mass.)) (Motion Hearing, Jan. 31, 2006) (transcript excerpt attached here as Exhibit B), at 41-42.

As Judge Wolf recognized, Coverall has placed into its arbitration provision so many unenforceable clauses that the provision is "permeated" by unenforceability such that the entire arbitration provision must be stricken.  To do otherwise would be to provide Coverall with "an incentive to include unlawful provisions" in its arbitration provision, Perez, 253 F.3d at 1287, and to reward it for doing just that.  Accordingly, the Court should hold that the arbitration provision in Coverall's franchise agreement be stricken in its entirety.

## CONCLUSION

In the interest of judicial efficiency and because the federal court in Massachusetts is expected to rule imminently on the very issue before this Court—the enforceability of Coverall's arbitration provision—Pineda requests that this Court hold off on ruling on Coverall's motion to compel arbitration. Alternatively, for the reasons set forth in Pineda's opposition brief and above, Coverall's motion to compel arbitration should be denied and Coverall's arbitration provision should be stricken in its entirety.

21

Respectfully submitted,
DENISSE PINEDA,

By her attorneys,


___/s/ Anthony L. Marchetti_____
Jerald R. Cureton
Anthony L. Marchetti
CURETON CLARK
3000 Midlantic Drive, Suite 200
Mt. Laurel, NJ 08054
(856) 824-1001

Shannon Liss-Riordan, admitted *pro hac vice*
Hillary Schwab, admitted *pro hac vice*
PYLE, ROME, LICHTEN, EHRENBERG
      & LISS-RIORDAN, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108
(617) 367-7200


Dated:        April 14, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2008, I caused a copy of this document to be served by electronic filing on all counsel of record.


___/s/ Anthony L. Marchetti_____
Anthony Marchetti, Esq.

22